MICHAEL KRAWIEC ET AL. *v.* BLAKE MANOR
DEVELOPMENT CORPORATION ET AL.
(9641)

DALY, FOTI and LANDAU, JS.

Argued November 7, 1991—decision released February 11, 1992

*Salvatore V. Vitrano,* for the appellant (named defend-
ant).

*John L. Laudati,* for the appellee (plaintiff).

FOTI, J. The defendant Blake Manor Development Corporation[1] appeals from the judgment of the trial court. In their complaint, the plaintiffs[2] alleged (1) breach of contract, (2) violation of expressed and implied warranties, (3) fraudulent misrepresentations, (4) violation of General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA), and (5) fraudulent conveyance.[3] The court rendered judgment for the plaintiffs against the defendant corporation on counts one, two and four, and against all of the defendants on count five. The court rendered judgment for the defendant corporation on count three.[4] The defendant claims that the trial court (1) improperly concluded that it had violated implied warranties, (2) improperly concluded that it had violated CUTPA, and (3) abused its discretion in concluding that the plaintiffs were entitled to damages in the amount of $15,468 and attorney's fees in the amount of $8680. We affirm the judgment of the trial court.

The trial court found the following facts. On September 1, 1987, the plaintiffs purchased lot number seventeen in the Blake Manor subdivision from the defendant. The subdivision, located in New Britain, consists of thirty-one lots laid out on the side of a hill. It was developed in three stages. The defendant used the engineer-

---

[1] There are also four individual defendants, directors and officers of the defendant corporation, who have not appealed from the judgment rendered against them on the fifth count of the complaint. We will refer in this opinion to Blake Manor Development Corporation as the defendant.

[2] The plaintiffs are Michael and Donna Krawiec.

[3] The defendant filed a counterclaim that was removed from the matter by substituted pleadings upon the defendant's refiling of its answer and special defenses.

[4] There is no written memorandum of decision, nor is the oral decision, as transcribed, signed by the trial judge. Practice Book § 4059. The plaintiffs have filed, as an appendix, a transcript of the oral decision. Practice Book § 4074. It is the appellant who bears the burden of providing an adequate record for review. *Oakes* v. *New England Dairies, Inc.,* 219 Conn. 1, 16, 591 A.2d 1261 (1991); see Practice Book § 4061.

ing plans of the previous owner and developer and did not hire its own engineer to review the preexisting site grading plans or to perform any engineering tests before proceeding with its development. The plaintiffs found the property through a real estate agent. This agent was the office secretary for the defendant. The plaintiffs had four young children, were expecting another child, and wanted a larger home with a spacious backyard. The defendant's agents told them that they should wait until the second phase of the development in that tract because lot number seventeen would be large enough to meet their needs.

On February 23, 1987, the plaintiffs entered into a contract with the defendant for the purchase and construction of a home on lot number seventeen for $182,900. The contract provided a limited warranty program that required that the defendant's performance adhere to standards of normal workmanship. The warranty required that the defendant establish the necessary grades and sewers to ensure proper drainage away from buildings. Further, it required that no standing water should remain in a manmade landscaped area twenty-four hours after a rain except swales and collecting areas which may drain as long as forty-eight hours after a rain or from sump pump discharge. It also provided that once the proper grades and swales were established by the defendant, the plaintiffs were required to maintain them.

In the spring of 1988, the plaintiffs and other homeowners living in the tract experienced severe flooding and erosion of their lots. All of the topsoil on the plaintiffs' lot washed away. Their backyard became a swamp with a foot of mud and gullies of up to two and three feet deep. The lot had not been rough graded properly. The contours were much steeper than shown on the subdivision map and water was draining onto it from all of the other lots. In August, 1988, the plain-

tiffs paid $968 for a minimal rough and finish grading, filling and reseeding. By the spring of 1989 the same conditions returned. The lot required additional regrading and removal of trees damaged by the flooding and erosion.

The city of New Britain ordered the implementation of an erosion remediation plan. This plan was principally designed to correct the drainage conditions of the roads and storm sewers in the subdivision. It did not address the individual concerns of the homeowners regarding their properties. The plaintiffs and other property owners signed agreements allowing the defendant to do the corrective work, which satisfied the city's concerns but did not solve the plaintiffs' problems. The defendant did not regrade the plaintiffs' property at the time it implemented the city's remediation and erosion control plan.

At the request of the parties, the court viewed the premises at the conclusion of the evidence and in the presence of counsel. The erosion and drainage problems continued on the property and it was obvious that there had been unsuccessful attempts to remedy the condition. Trees located on the property were dying as a result of improper rough grading, and standing water remained on the property for weeks.

I

The defendant first claims that the court improperly concluded that it had violated implied warranties under General Statutes § 47-118.[5] The defendant argues that

---

[5] General Statutes § 47-118 provides in pertinent part: "(a) In every sale of an improvement by a vendor to a purchaser, except as provided in subsection (b) of this section or excluded or modified pursuant to subsection (d), warranties are implied that the improvement is: (1) Free from faulty materials; (2) constructed according to sound engineering standards; (3) constructed in a workman-like manner, and (4) fit for habitation, at the time of the delivery of the deed to a completed improvement, or at the time of completion of an improvement not completed when the deed is delivered.

General Statutes §§ 47-116 through 47-121, entitled "New Home Warranties," limits the warranties to single-family dwelling units and fixtures or structures made a part thereof. The defendant states that the court improperly found that the term "improvement" as defined by § 47-116[6] and used in § 47-118 included and extended to "soil and drainage defects." The defendant claims that § 47-118 contains implied warranties that apply only to a single-family dwelling unit, fixture or structure made a part thereof. We do not agree.

General Statutes §§ 47-116 and 47-118 "impose liability under an implied warranty on the builder/vendor of a new home in favor of the purchaser of any improved real estate." *Beckman* v. *Jalich Homes, Inc.,* 190 Conn. 299, 307, 460 A.2d 488 (1983). " 'It is a cardinal rule of construction that statutes are to be construed so that they carry out the intent of the legislature. The intent is to be ascertained from the language of the statute itself, if the language is plain and unambiguous.' " *Cashman* v. *Calvo,* 196 Conn. 509, 512, 493 A.2d 891 (1985), quoting *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 375, 279 A.2d 561 (1971). There is no language in §§ 47-116 through 47-121 that limits any part of those statutes to the structure of the newly con-

---

"(b) The implied warranties subsection (a) of this section shall not apply to any condition that an inspection of the premises would reveal to a reasonably diligent purchaser at the time the contract is signed.

"(c) If the purchaser, expressly or by implication, makes known to the vendor the particular purpose for which the improvement is required, and it appears that the purchaser relies on the vendor's skill and judgment, there is an implied warranty that the improvement is reasonably fit for the purpose."

[6] General Statutes § 47-116 provides in pertinent part: "As used in this chapter, unless the context otherwise requires: 'Improvement' means any newly constructed single family dwelling unit, any conversion condominium unit being conveyed by the declarant and any fixture or structure which is made a part thereof at the time of construction or conversion by any building contractor, subcontractor or declarant . . . ."

structed single-family dwelling. Rather, the logical reading of the definitions contained in § 47-116, in conjunction with § 47-118 setting forth the implied warranties, leads us to conclude that the legislature intended that the implied warranties apply to both the newly constructed single-family dwelling and the lot upon which it sits when they are sold to a purchaser as a package by the builder/vendor.

The trial court correctly concluded that "[b]ecause tract homes are sold as a package, that is, the house and lot are sold together, the implied warranties are breached not only because of structural defects but also because of the unsuitability of the lot upon which the house was built." The trial court, citing *Hesson* v. *Walmsley Construction Co.*, 422 So. 2d 943 (Fla. Dist. Ct. App. 1982), also noted that a builder/vendor is in a better position than a buyer to investigate the quality of the land when developing the tract. Placing on the builder the onus of furnishing the buyer with a functional home and a suitable house site encourages the builder to exercise greater care in the selection of building sites. Further, because the developer is in a better position than the purchaser to prevent problems relating to soil and drainage defects in the soil, the implied warranties of good workmanship should extend to those defects.

The court properly concluded that the defendant breached the implied statutory warranties that the drainage system would be installed according to sound engineering standards, and that the house would be constructed on the lot in a workmanlike manner and would be fit for habitation.

## II

The defendant next claims that the court improperly concluded that it had violated CUTPA. The defendant points out that the court based its finding of a CUTPA

violation on the defendant's breach of the statutory implied warranties. The defendant argues that because the finding of a breach of warranty is not supported by the record, the finding of a CUTPA violation cannot stand. It further claims that the other criteria as set forth by the "cigarette rule" have not been met. We do not agree.

The purpose of CUTPA is to protect the public from unfair practices in the conduct of any trade or commerce, and whether a practice is unfair depends on the finding of a violation of an identifiable public policy. *Daddona* v. *Liberty Mobile Home Sales, Inc.,* 209 Conn. 243, 257, 550 A.2d 1061 (1988). Connecticut courts, having adopted the federal "cigarette rule," consider the following criteria to determine whether certain practices violate CUTPA: " '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).' " *FTC* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 244–45 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972); *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* 192 Conn. 558, 567–68, 473 A.2d 1185 (1984). Our Supreme Court has noted that while in certain cases all three criteria set forth in the "cigarette rule" may be required to be satisfied, generally all need not be satisfied to support a finding of unfairness. *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 242, 520 A.2d 1008 (1987). "A practice may be unfair because of the degree to which it meets one of the criteria." Id.

"Whether a practice is unfair and thus violates CUTPA is an issue of fact." *DeMotses* v. *Leonard*

*Schwartz Nissan, Inc.,* 22 Conn. App. 464, 466, 578 A.2d 144 (1990). The facts found must be viewed within the context of the totality of circumstances which are uniquely available to the trial court. *Kaplan* v. *Kaplan,* 186 Conn. 387, 391, 441 A.2d 629 (1982). Here, the trial court made specific findings of fact. It is clear that "[t]his court may reject a factual finding only if it is clearly erroneous, that is, if the finding is 'unsupported by the record, incorrect, or otherwise mistaken.' " *J & J Enterprises of Lenoir, Inc.* v. *Shaw,* 190 Conn. 321, 322, 460 A.2d 1283 (1983). The trial court's findings are not clearly erroneous and the trial court's conclusion that the defendant's violation of the implied warranties pursuant to § 47-118 offended public policy is supported by the record.

### III

The defendant's final claim is that the trial court abused its discretion in concluding that the plaintiffs were entitled to damages in the amount of $15,468 and attorney's fees in the amount of $8600. The defendant argues that the court's findings, pursuant to which it awarded the sum of $12,000 for damages for regrading, were unsupported by the evidence, and that, since the court incorrectly concluded that the defendant had violated CUTPA, its award of attorney's fees was clearly erroneous and unsupported by the record.

"It is beyond dispute that the trial court has broad discretion in determining the relevancy and materiality of evidence." *Web Press Services Corporation* v. *New London Motors, Inc.,* 203 Conn. 342, 355, 525 A.2d 57 (1987). The credibility of witnesses and the weight to be accorded their testimony are within the province of the trier of facts, who is privileged to adopt whatever testimony he reasonably believes to be credible. *Ferri* v. *Pyramid Construction Co.,* 186 Conn. 682, 690,

443 A.2d 478 (1982); *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 240, 348 A.2d 641 (1974).

In rendering judgment, the court awarded $968 for preliminary costs, $12,000 for regrading, and $2500 for tree removal for a total of $15,468. In explaining, the court stated: "The court would indicate with regard to damages that although a serious attack was made upon the expertise and credibility of Dean Burhoe, the court finds that that attack on his expertise does not affect the accuracy and the believability of the observations that he made. He apparently is the only non-party witness in this case who actually was present when the situation was most pronounced, in the spring of 1988. The court does not perceive Burhoe's testimony on the issue, actually the critical issue with regard to Burhoe's testimony was not whether the erosion sedimentation plan did the job that the city expected it would do, but whether it did the job to which the [plaintiffs] were entitled as a matter of law insofar as their own lot was concerned.

"Burhoe by reason of being a landscaper, of having observed the original conditions, the court finds and gives great weight to his testimony. The court would also note that although it found helpful testimony of [two other witnesses] that their concerns obviously were different in kind and scope from those of the [plaintiffs], so that the court has given great weight and accepts the testimony of Burhoe as to damages, although not necessarily relying on his testimony with regard to issues of liability. . . . Burhoe indicated that these estimates were reasonable ones . . . ."

The record is clear that Burhoe's testimony established that there was an improper rough grade and drainage and that proper completion of the job required replacement of the topsoil along with the furnishing of sod and seed that had been eroded due to poor drain-

age. Burhoe testified that it would cost $12,000 to fix the back and side yards. He also described the regrading process and pointed out that the $12,000 estimate would be for topsoil, spreading of the topsoil, sod and placement of the sod, rough grading, equipment and additional fill. There was evidence to support the trial court's findings that those damages were reasonably and necessarily incurred as a result of the defendant's breach and statutory violations.

Because we have already concluded that the trial court properly found a violation of CUTPA, an award of attorney's fees was proper.

The judgment is affirmed.

In this opinion the other judges concurred.