[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties contracted for the defendant (Kasmun) to construct a single family residence for the plaintiff (Beebe) in the town of Columbia. This four count law suit alleges: 1. that Kasmun is in breach of contract for construction which was not in conformity with the contract in several respects, 2. that Kasmun is in violation of the Connecticut Unfair Trade Practices Act, Section 42-110b of the general statutes, 3. that Kasmun is in violation of Section 47-117
of the general statutes (Breach of New Home Warranty) and 4. CT Page 1475 that Kasmun is in violation of Section 47-118 of the general statutes (Breach of Implied Warranty).
Both parties were represented by counsel at the trial of this matter, and the Court makes the following findings with respect to each of the claimed defects and claims.
Fireplace
Kasmun did not follow the plans and specifications with respect to the support for the fireplace. A masonry wall which was specified in the blueprints to support a heavy field-stone fireplace was omitted. As a result of this breach, the fireplace was inadequately supported on wood framing which resulted in a bowing or sagging of the floor. The repair of this defect necessitated the moving of some plumbing in the basement, the jacking up of a basement beam to relieve the sag and the placement of lolly columns to provide adequate support, and then restoring the plumbing. Although Kasmun obviously could have done the work himself, under the circumstances of this case, where after three years he still could not fix leaks in the roof (as will be more fully discussed), the Court finds the plaintiff acted reasonably in getting the work done by somebody else. The Court, in addition, finds that Beebe told Kasmun about the fireplace deflection in April 1988 (within one year of closing), but that Kasmun passed it off as inconsequential at that time. It was only later, when Beebe hired an expert (Alfred Eggan) that the serious nature of the defect was fully known and appreciated. Beebe is entitled to recover under both contract and breach of warranty for this defect. Beebe hired a contractor, Ferdinand Desharnais, to make this repair. Mr. Desharnais also made necessary corrections caused by defective workmanship in the garage as hereinafter discussed. The combined bill of $3800.00 for the work done in connection with the fireplace and the garage beam is found to be reasonable and is awarded as damages.
The plumbing work was not done by Mr. Desharnais. The temporary removal and reinstallation of basement pipes was done by John Beebe, Sr., the plaintiff's father. Mr. Beebe, Sr. is a retired plumber who did substantially more work at the time than move the pipes needed for the repairs. He isolated heating zones for the home, installed a boiler drain and generally improved the plumbing and heating system. He CT Page 1476 has not broken down the cost of the work related to this defect but it was not a major part of the work he did. The Court cannot speculate as to this item and will not award damages for plumbing repairs.
Garage Beam
The contract specifications call for a steel I-beam in the garage or a substitute of equal quality. The support of a steel beam or its equivalent was needed as there were living quarters above the garage. When Kasmun had difficulty obtaining a steel I-beam he decided to use a 2" x 12" beam. This turned out to be an inadequate substitute as a weight carrying beam. There was a clear and significant deflection requiring correction. Beebe made Kasmun aware of the obvious deflection in April of 1988 who, as with the fireplace, said it was inconsequential. For the same reasons discussed above, Beebe was reasonable in arranging for someone else to do the work when he determined that it was, in fact, a matter of some consequence. Beebe is entitled to damages for this defect under either theory of contract or breach of warranty.
Trapezoid Windows
A change order was requested by Beebe to install two trapezoid windows in the house. The original plans did not include trapezoid windows, however, according to the Door and Window Schedule those other windows which were listed for installation were to be Anderson windows. The trapezoid windows were built on site by Kasmun with 2 ply glass and wood frames. Anderson trapezoid windows would have cost two or three times as much as those which were installed. Beebe had seen trapezoid windows in another house Kasmun was building in the area and asked Kasmun to install two such windows. The windows which Beebe had seen were the same type that Kasmun installed here, that is woodframe, custom built on site with 2 ply glass. Further, on April 29, 1988 in a letter from Beebe's attorney to Kasmun detailing unfixed problems the windows were not mentioned, and Beebe's expert witness testified that builders usually build trapezoid windows on site as was done here. The plaintiffs have not proved that the contract called for Anderson trapezoid windows and damages are not awarded for this item.
Roofing and Leaks CT Page 1477
The Beebes experienced roof leaking as early as during the construction phase. Water was coming into the house from roof leaks in April 1987, at which time Kasmun did some caulking. The leaking continued however, and although Kasmun came out on four occasions (November 1987, January 1988, March 1988 and December 1988), the only corrective action he took was to caulk around the sky lights, and that did not cure the problem.
In March of 1990 the Beebes hired a professional engineer, Alfred C.W. Eggen, who determined that the leaks were probably coming from the area of the skylights and/or chimney. He concluded that shingles had to be removed and replaced in order to correctly reflash those areas and to correct any defects. He queried whether a reliable roofer would be willing to remove only a portion of the shingles (and noted that a significant number of shingles would have to be removed, at least), and still stand behind his work. Also, by this time the shingles had been in place for years, making it more difficult to work with them.
The Beebes hired Ferdinand Desharnais to repair the roof, but, as Mr. Eggen suggested, the contractor would not do partial repairs and guarantee his work. Desharnais found that the skylights were not attached to the house, flashing was defectively installed and there was no underlayment or felt paper under the shingles. The shingles the Beebes had purchased were "Architectural Look" shingles, a high quality shingle which the manufacturer specified required an underlayment in order for the manufacture's warranty to be effective. In fact Kaj Munic, the owner of Kasmun, knew that underlayment was suggested and at his deposition conceded that it was required.
Under these circumstances, the Beebes were justified in having the entire roof repaired end the Court awards $5981.00 as damages for this defect.
Driveway
The driveway was installed in approximately September 1987 by a contractor other than Kasmun who was independently hired by Beebe. Beebe claims that Kasmun did not put in an adequate base and when the asphalt was later installed it CT Page 1478 heaved and buckled during the winter of 1988. Aside from the fact that some of the damage was probably caused by freezing in a shallow pipe beneath the driveway which Beebe installed, Kasmun is not responsible for any driveway defects. The plaintiff has not proved that the gravel drive installed by Kasmun did not conform to the specifications and the actual installer did not indicate the bed was unsuitable for paving. This claim is denied.
Insulation
When Beebe experienced ice forming in the gutters, he hired Therma-Scan, Inc., a company that does infared heat loss analysis. The tests concluded that the structure was well insulated with some exceptions where heat loss was more than it should have been. Beebe added to the insulation throughout the attic by installing "R-30" fiberglass batts over the existing insulation. He seeks to recover at least the $400.00 he spent for the new insulation. The plaintiff did not prove, that the insulation did not conform to the 6" specified in the contract. If in fact there was some uneven distribution, especially at the eave areas, that was easily correctable without adding to the entire attic and the Court will not award damages for this claim.
Cutpa Claim
The plaintiff claims that the breaches of warranty by the defendant were so egregious and unconscionable that they are an unfair trade practice entitling him to attorney's fees. The defendant claims that he attempted to fix the leaks in good faith and was not aware of the structural defects until they were discovered by the engineer retained by Beebe, and that he was not given an opportunity to correct them.
The question of unfair trade practice is one of fact to be determined under the totality of all the circumstances. Krawiec v. Blake Manor, 26 Conn. App. 601 (1992).
The defects in the construction of this home were major structure defects. The deflections in the fireplace area and in the garage were called to Kasmun's attention and he seemed unconcerned about them. The major defect which Kasmun did show a concern about (the leaking roof) was never CT Page 1479 and in the garage were called to Kasmun's attention and he seemed unconcerned about them. The major defect which Kasmun did show a concern about (the leaking roof) was never adequately addressed. The attempted caulking on some four occasions was improper and unfair to the homeowners. Beebe put up with leaks for years and was then required to replace the entire roof.
Obviously any newly constructed home is likely to have some defects requiring call backs by the builder, but the Court does not see this situation as falling into that category. There was no justification for failing to support the fireplace properly or to take reasonable workmanlike steps to repair the roof, and accordingly, the Court finds these derelictions to be an unfair trade practice.
After reviewing the bill submitted by counsel and giving consideration to the fact that the plaintiff did not prevail on all his claims, the pre-trial proceedings, the length of trial, the Court is of the opinion that award of $7000.00 in counsel fees is fair and reasonable.
Accordingly, judgment shall enter for the plaintiff in the amount of $16,781.00, plus costs.
BY THE COURT, Lawrence C. Klaczak Judge, Superior Court