[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Arthur F. Anderson and Margaret Anderson, bring this suit seeking money damages for the cost of repairing and reconstructing an addition to their home built by the defendant David E. Onofrio d/b/a Total Construction. The plaintiffs claim in the first count of their complaint that the defendants, David Onofrio and Debra Onofrio, were negligent in their performance of their contractual obligations, resulting in a leaking roof and cracked tile floors. In their second count, the plaintiffs allege that the defendants breached their contract with the plaintiffs by failing "to properly complete the work agreed upon."
The plaintiffs further claim in the second count that the defendants breached "their warranty pursuant to Connecticut General Statutes Section 47-116 et seq."
At trial, the plaintiffs presented no evidence to establish any participation by defendant Debra A. Onofrio, who was not proven to have signed or provided any services as to the contract at issue. Accordingly, judgment shall enter in favor of that defendant.
The court finds the facts to be as follows: In the late fall of 1985, the plaintiffs and defendant David Onofrio began discussions of the plaintiffs' desire to enlarge their home at 447 Oak View Drive in Orange, which was built in the 1960's, by adding a one-story addition in the rear of the house to increase the size of the kitchen, dining room and bedroom, and to add a new bathroom and "mud room" at the rear entrance. The contract price for the eight foot by forty-two foot addition was $26,000.00.
The plaintiffs and defendant David E. Onofrio signed a written contract drafted by Mr. Onofrio that stated the dimensions and some, but not all, of the materials to be used. No blueprints or architect's plans were prepared, and the defendant essentially used his own judgment as to configurations and materials that were not specified in the contract.
Construction started in November 1985 and was completed in April 1986. The plaintiffs timely paid each of the installments specified in the contract. They also paid for some electrical work which was the subject of additional written agreements and which is not at issue in this lawsuit. At the time the CT Page 7155 plaintiffs made the last payment, they were fully satisfied with the defendant's performance and nothing remained on any "punch list" for completion.
In October 1987 the plaintiffs began to experience leaks after rainstorms in the area where the addition joined the roof of the existing house. These leaks caused dripping through the sheetrocked ceilings, first in the bedroom, and then, as time went by, in the kitchen and hall, all originating along the roof junction.
Plaintiff Arthur Anderson made frequent calls to the defendant to ask him to remedy the leaks, however the defendant did not return to the premises until February 1987, when he inspected the evidence of leaks and had one of his employees install a course of twenty-four inch flashing and new shingles along the roof junction. The plaintiff continued to experience leaks after heavy rainstorms, and they attempted without success to reach the defendant to request further efforts at repair. When he did not respond, they had a lawyer send the defendant a letter, dated April 3, 1987, telling him to present within seven days a plan to repair the leaks and resulting water damage. The defendant did not respond to this letter, and the plaintiffs filed this suit on June 27, 1990.
The defendant has raised, as the sole special defense, the expiration of the statute of limitations. While the particular limitation period claimed to be applicable is not identified in the defendant's pleading, in oral argument he invoked the three-year statute of limitations applicable to tort claims,52-577 C.G.S. That statute provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Because the plaintiff clearly brought suit more than three years after the completion of the construction they claim was negligently performed, the court will consider the special defense first. The allegations of the first count of the complaint are that the defendant constructed the addition in an "unskilled and negligent manner." While the plaintiffs appear to be claiming negligence, not breach of contract in paragraph 7 of their complaint, the paragraphs immediately preceding this paragraph recite that the parties had fully complied with their own obligations under the contract. While the first count lacks any mention of a breach of implied warranty, in paragraph 8 of the second count the plaintiffs allege that the defendants "breached the Agreement in that they CT Page 7156 failed to properly complete the work agreed upon." Read as a whole, the plaintiffs' allegations, though inartful, sufficiently invoke a claim of violation of contractual obligations.
The six-year statute of limitations applicable to claims arising under written contracts has been held to be applicable to claims of breach of implied warranties that the contract work will be performed in a skilled and workmanlike manner. Kennedy v. Johns-Manville Sales Corporation, 135 Conn. 176, 179 (1948). See, in accord, Cacace v. Morcaldi, 37 Conn. Sup. 735 (1981); Fellanbaum v. Markowski, 4 Conn. Cir. 363 (1967). Accordingly, the plaintiffs' claims of breach of the implied warranty of skillful, workmanlike performance is not barred by the applicable statute of limitation.
One of the claims made in the second count of the complaint is a violation of 47-116 C.G.S. et seq. This statute, Chapter 827, was originally enacted in P.A. 75-637, which is titled "An Act Concerning Implied Warranties in the Sale of New Single Family Dwellings". Chapter 827, at 47-116 C.G.S., defines "improvement" as "any newly constructed single family dwelling unit, any conversion condominium unit being conveyed by the declarant and any fixture or structure which is made a part thereof at the time of construction or conversion by any building contractor, subcontractor or declarant." This chapter is titled "New Home Warranties."
The defendant correctly claims that Chapter 827 is not applicable to the construction of additions to existing homes, an activity that is subject, instead, to the provisions of the Home Improvement Act, 20-418 C.G.S. et seq. and to principles of the common law, such as breach of contract or negligence. See Scribner v. O'Brien, 169 Conn. 389, 399-400 (1975).
The plaintiffs have cited no authority for their claim that the New Home Warranties Act is applicable to the construction of additions on existing homes. The appellate courts have applied the statute only to newly constructed homes, Bechman v. Jalich Homes, Inc., 190 Conn. 301 (1983), and to land conveyed as part of the purchase of a newly constructed home. Krawiec v. Blake Manor Development Corp., 26 Conn. App. 601, 605 (1992). In Knight v. Breckheimer, 3 Conn. App. 487, 490 n. 3, the Appellate Court noted that a claim regarding the septic system in a home that was sold by a homeowner, not a builder, did not involve the consideration of new home warranties pursuant to Chapter 827. CT Page 7157
As to the claim made in the first count of the complaint, the court finds that it has been proven that the design and construction of the joinder between the existing roof and the roof of the addition was not completed in a skilled and workman-like manner. The contract itself contains no specification as to the slope of the roof nor the method of integrating the new roof with the existing roof. The court does not find credible the defendant's claim that he gave the plaintiffs the option of several methods of construction and merely completed the roof in the manner they designated. If the defendant had truly feared that the roof would leak unless it was covered with rolled roofing or unless it was built in such a way that there would be an uninterrupted roof line from the peak of the house to the edge of the rear section, it seems very unlikely that he would not have referred, in drafting the contract, to the plaintiffs' selection of an approach contrary to his recommendation. The court concludes, instead, that the plaintiffs left the choice of the method of roof construction to the defendant and that he selected a design that created a hazard of leaking along the junction without taking adequate precaution in his choice or application of materials. Alphonse Aloi, the builder who ultimately repaired the roof, stopped the leaking by applying an ice shield and building ventilation into the roof to reduce the infiltration of moisture. He identified the failure to use such materials as a failure of workmanlike performance in constructing a roof that had very little slope.
When advised that the roof leaked, the defendant made an attempt to repair it, however the attempt was unsuccessful, and the court finds that the defendant failed to respond to the plaintiffs' further requests that he try other repairs, even when he received a letter from their lawyer demanding that he repair the roof.
The court finds that as a result of frequent leaks along the roof joint, the sheetrock in the area around that joint was repeatedly subjected to water damage. No evidence was presented to suggest that the damage could have been remedied by means other than replacement of the sheetrock in the affected areas.
The plaintiffs claim that the work performed by the defendant was unworkmanlike as to several other features of the construction, specifically, the framing of the exterior door, the installation of the skylight in the kitchen, the installation of CT Page 7158 the tile floor in the kitchen and hallway, and the finish to a supporting steel beam in the kitchen ceiling.
The plaintiffs did not prove that the tile was installed in other than a workmanlike manner. The contract between the parties specified the use of ceramic tile flooring but indicated no particular method of installation. The defendant credibly testified that he figured the job based on an adhesive application of the tile to the half-inch subflooring, not the more expensive alternative called a "mud job", by which a thicker subfloor and cement-like adhesive is used. The defendant testified, without contradiction by the plaintiffs, that he had suggested a thicker subflooring after he determined the nature of the materials used in the original flooring, but that the plaintiffs told him to proceed in a way that would not create a need for a higher lip between the tile and adjoining surfaces. While the plaintiffs claim that the floor was extensively cracked, they chose not to present at trial the photographs they claim to have taken of the tile. They did not replace the tile with the same product, but selected a different tile. Mr. Aloi, who installed a new subfloor for a "mud job" by a tiling subcontractor, advanced a variety of different reasons why the floor had cracked, varying from the use of the wrong adhesive to the use of nails rather than screws to secure the subfloor. His theories were so numerous that the court did not find his testimony credible, and the court finds that the plaintiffs did not discharge their burden of proving that the replacement of the tile floor with a different tile, differently applied, was the result of faulty performance by the defendant. Even if defective performance had been proven, the plaintiffs have offered evidence only as to the cost of the most expensive means of replacing a floor, not the cost of re-doing the floor by conventional means. Since the contract did not specify a "mud job," the plaintiffs were not entitled to performance to that specification.
The court finds that the defendant's installation of the exterior door, which was located flush with, rather than slightly higher than, the adjoining deck, resulted in water damage to the flooring from moisture and constituted defective performance.
The court does not find that the location of the plumbing vent was a result of unworkmanlike performance, but rather that Mr. Aloi relocated the vent to suit his own preference, which the court does not find to be coextensive with the standard of workmanlike performance. Similarly, the plaintiffs seek damages CT Page 7159 for the cost of covering the steel beam with cedar and adding two false beams for aesthetic purposes. The court does not find that the aesthetic purpose that led the plaintiffs to favor this change constitutes proof of unworkmanlike performance.
Mr. Aloi performed work on the plaintiff's home over a period of three years, from 1989 to March 1992. Though he created a document, Exhibit D, attempting to list the portions of his $10,777.00 in receipts that related to repair of faulty workmanship of the defendant, the court finds that his reconstruction, created at least a year after the job was performed and purportedly on the basis of a work log that the plaintiffs did not present in evidence, is not wholly reliable.
Mr. Aloi installed twelve to fourteen replacement windows in the plaintiffs' home, which he acknowledged accounted for about $3,000.00 of his $10,777.00 in billing; and other items in his billing are for unrelated work.
The court finds the proven damages to be $5,627.00 for repairs to the roof, the interior sheetrock, and the flooring near the exterior door.
The court finds that the plaintiffs' expenditure for a new skylight was not proven to be caused by defective installation rather than by their desire for a larger, relocated skylight several years after the installation of the original one, about which they made no complaint whatever to the defendant at any time.
The plaintiffs are further entitled to recover the cost of repainting the areas of sheetrock that had to be replaced, that is, $195.00.
Judgment shall enter in favor of defendant Debra A. Onofrio.
Judgment shall enter in favor of the plaintiffs against defendant David E. Onofrio in the amount of $5,822.00. The plaintiffs shall recover their court costs.
Beverly J. Hodgson Judge of the Superior Court CT Page 7160