[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This dispute arises out of an uninsured motorist claim against plaintiff's own insurance carrier alleging a breach of contract in the first count (not relevant here), an unfair insurance practices claim under General Statutes § 38a-815 et seq (CUIPA) in the second count and an unfair/deceptive trade practices claim under General Statutes § 42-110g et seq (CUTPA) in the third count. The defendant insurance carrier filed a motion to strike counts two and three of the plaintiff's complaint on the grounds that those claims are premature. Specifically, the defendant claims that since they are based on the bad faith of an insurer they are legally insufficient because they must await disposition of the underlying claim. The defendant cites several cases from both foreign and Connecticut jurisdictions in support of this argument. CT Page 15555-a
Suffice it to say that all of the cases cited by the defendant hold that a claim against the insurer for bad faith in settlement practices based on the common law principle of good faith and fair dealing must await the disposition of the underlying cause of action before such a claim for bad faith may be instituted. The defendant, however, has misconstrued the thrust of the plaintiff's claim. In Counts Two and Three, the plaintiff does not claim the defendant acted in bad faith because it refused to settle the plaintiff's uninsured motorist claim. Rather, the plaintiff attacks the defendant's policy behind its decision not to settle claims involving what it considers minimum damage/impact accidents as being in violation of public policy. As such, that policy is in violation of CUTPA and CUTPA. Furthermore, plaintiff claims that its CUTPA and CUTPA claims are independent of its breach of contract claim alleged in the first count, which the defendant has characterized as the "underlying claim." Consequently, there is no valid reason why these claims may not be pursued simultaneously. This court agrees.
Although this precise issue has not been ruled on directly by any Connecticut Appellate Court, it was obliquely addressed by our Supreme Court in Lees v. Middlesex Insurance Company,219 Conn. 644 (1991) in the context of a breach of a homeowner's insurance contract joined in the same action as CUTPA and CUTPA claims. In holding that an action on a policy differed significantly from an action grounded in CUTPA and CUTPA, the court observed at p. 653:
 "In an action on an insurance policy, the conduct giving rise to the insurer's liability is a failure to pay out the policy proceeds when the insurer is contractually bound to do so. The factual inquiry focuses on the nature of the loss, the coverage of the policy and whether the parties have complied with all the terms of the policy. In a CUTPA and CUTPA claim, however, the insurer's liability is ordinarily based on its conduct in settling or failing to settle the insured's claim and on its claim settlement policies in general. The factual inquiry focuses, not on the nature of the loss and the terms of the insurance contract, but on the conduct of the insurer. Furthermore, in an action `on [the] policy', the insurer's duty to comply with the policy provisions stems from the . . . insurance agreement and is contractual in nature. In a CUIPA and CUTPA claim, the insurer's duty stems . . . from a duty imposed by statute." CT Page 15556 See also, Heyman Associates No. 1 v. Insurance Company of the State of Pennsylvania, 231 Conn. 756, 790 (1994)
The analogy to this case is inescapable. Here the plaintiff has brought a breach of contract claim (first count) and a CUIPA and CUTPA claim attacking the insurer's settlement policies. Both the factual and legal inquiries on the latter two claims differ substantially from the breach of contract claim. The result in the latter two claims is not dependent on the result of the breach claim.[1] Consequently, there is no valid reason to await the outcome of the breach of contract claim before proceeding with the statutory claims. Moreover, recent Superior Court decisions have permitted such actions to proceed simultaneously. See Jones v. Safeco Insurance Company ofIllinois, Sup. Court, Judicial District of Fairfield at Bridgeport, Docket No. CV98 035 76 14 S (April 28, 1999, Melville, J.), citing with approval Khanthavong v. Allstate Ins.Co., Sup. Court, Judicial District of Fairfield at Bridgeport, Docket No. 32 85 74 (Jan. 24, 1996 Levin, J.) (18 Conn. L. Rptr. 304, 308)
For the foregoing reasons, this court finds defendant's theory underlying its motion to strike and supporting case law to be inapplicable to the plaintiff's claims as plead in Counts Two and Three of her complaint.
 CUTPA CLAIM
Count Two of the plaintiff's complaint claims a CUIPA cause of action. In Mead v. Burns, 199 Conn. 651 (1986), our Supreme Court stated that the applicable section of CUIPA reflected what the legislature had determined would be an unfair or deceptive insurance practice. The practice complained of by the plaintiff is the defendant's minimum damage policy. However, refusing to settle minimum property damage cases is not a prohibited insurance practice as delineated by CUIPA, § 38a-816 (1) through (16).[2] As a result, CUIPA is inapplicable. This does not, however, preclude recovery based on CUTPA.
 CUTPA CLAIM
Count Three of the plaintiff's complaint asserts a CUTPA cause of action. A CUTPA cause of action based upon unfair or deceptive practices must build upon the public policy embodied in a specific statutory provision and be consistent with the CT Page 15557 regulatory principles established by this underlying statute.Calnan v. Allstate Indemnity Company, No. 98-0264160S,1998 Ct. Sup. 14636 (Dec. 3, 1998). The purpose of CUTPA is to protect the public from unfair practices in the conduct of trade or commerce. The policy behind CUTPA is to encourage litigants to act as private attorneys general by bringing actions for unfair or deceptive practices. Hernandez v. Monterey Village AssociatesLtd. Partnership, 553 A.2d 617, 17 Conn. App. 421 (1989) Whether such a practice is unfair depends upon finding a violation of public policy. Krawiec v. Blake Manor Development Corp.,602 A.2d 1062, 26 Conn. App. 601 (1992). In addition, CUTPA is a remedial statute and must be construed liberally in an effort to effectuate its public policy goals. Web Press Corp. v. New LondonMotors, Inc., 203 Conn. 342, 354 (1987). Therefore, although the plaintiff failed to sufficiently state a CUTPA claim based on the regulatory principles established by CUIPA, in light of the aforementioned policy and construction considerations, plaintiff's Count Three CUTPA claim, is not precluded.
In Blakeslee Arpaia Chapman v. U.S.F.G. Co.,11 Conn. L. Rptr. 169, 175-76 (March 4, 1994, Hurley, J.), the court held that the defendant's alleged violation of General Statutes §49-42 could provide a basis for the plaintiff's CUTPA claim notwithstanding the fact that the plaintiff's CUIPA claim must be dismissed. This is analogous to the instant case. Judge Hurley reasoned that since both § 49-42 [enforcing payment under a performance bond] and CUTPA are remedial statutes which must be construed liberally and, therefore, a violation of that section provided the foundation for a CUTPA cause of action. Id., 176.
Similarly, in the instant case, the plaintiff has sufficiently alleged actions which, if proven to be offensive, are in contravention of the public policy advanced by § 38a-336
[the uninsured motorist statute], whose purpose it is to protect citizens from sustaining losses incurred from uninsured drivers.Four Beaches Condo v. W.C. Brescia Plumb, No. CV96 0384124,1997 Ct. Sup. 5563, 5571 (May we, 1997), citing Amendola v.Giammattei, No. 260230 (June 27, 1991, Ramsey, S.T.R.) Therefore, even though the plaintiff's CUIPA claim must fail, her CUTPA claim can be grounded in the uninsured motorist statute.
Although a violation of the public policy of this statute is not specifically alleged by the plaintiff, it is implicated by the very nature of the instant case. This case involves, inter alia, an action brought by the plaintiff to recover under its CT Page 15558 uninsured motorist policy with the defendant. This type of insurance policy is predicated on the law set forth in § 38a-336.
Several Connecticut courts have recognized
 ". . . . the principle that the public policy and public interest intended to be promoted by remedial social legislation are ordinarily advanced by implying therefrom a judicially cognizable cause of action which enforces the legislative purpose." Yale-New Haven Hospital v. Mitchell, 44 Conn. Sup. 274 (1995); see also, Euresti v. Stenner, 458 F.2d 1115; Lally v. Copygraphics, 173 N.J. Super 16.
In addition, other types of statutory violations have been held to supply a sufficient basis for a CUTPA claim. See PremierRoofinq Co. v. Insurance Co. of N.A., No. 31 24 38,1995 Ct. Sup. 1933 (March 3, 1995.[3]
The public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. Allessa v. Allstate Insurance Co., No. CV95 05 05 50,1995 Ct. Sup. 12772 (Nov. 7, 1995) citing Caulfield v. AmicaMutual Ins. Co., 31 Conn. App. 787-88. Therefore, for the defendant to offhandedly deny its own insured's uninsured motorist claim based on a business practice — a practice that the defendant admittedly stated applies to all minimum property damage/impact cases (plaintiff's complaint at 2) — offends the public policy of § 38a-336. In view of the remedial aspects of both § 42-110g and § 38a-336, and in light of the liberal construction afforded these statutes, combined with the plaintiff's allegations that the defendant's minimum damage/impact policy was the basis for its decision in refusing to settle plaintiff's claim, the defendant insurer has sufficiently implicated public policy to allow plaintiff to maintain her CUTPA claim.
 OTHER PUBLIC POLICY CONSIDERATIONS
By its very nature, insurance is designed to protect individuals and/or businesses from risk. Insurance is generally understood to be an arrangement for transferring risks. ROBERT E.KEETON ALAN I. WIDISS, INSURANCE LAW: A GUIDE TO FUNDAMENTALPRINCIPLES, LEGAL DOCTRINES, AND COMMERCIAL PRACTICES
CT Page 15559 (Practicitioner's Ed. 1988), 3. An individual pays sums of money in the form of premiums to transfer a particular risk. That protection or indemnity is what is bargained for. It is, therefore, unfair and illogical for an insurance company to have a minimum property damage policy, such as the one involved in this case, as it foregoes the very purpose of insurance. The defendant, as well as all insurance companies, cannot be allowed to take an individual's money and then pass the risk back to that individual, by precluding them from obtaining reasonable damages and/or the coverage they have been paying for. This is a violation of the public policy established by the uninsured motorist statute. The defendant's enforcement of a policy of no settlement in minimum impact cases forces insureds, claimants and accident victims to file suit to be compensated for any resulting losses sustained in such accidents. Passing this risk is an unconscionable advantage for the insurance company. Id. at 615. This is because it received payment to undertake precisely such a risk. Therefore, in the absence of prior notice to its insureds, it is contrary to public policy for an insurance company to forego the very nature of its existence and oppressively use its superior bargaining position to hold out on settlement or claims requests and force the other parties to absorb the loss or file suit and expend more just to obtain what they bargained for.
The insured is supposed to receive a measure of certainty in exchange for his or her premium. This certainty is that if a loss of a specified type occurs, payment from the insurer provides an indemnification for the loss. Id. at 12. Insureds reasonably expect that they will be covered for their injuries or any other losses under their policy and that the insurer will pay them. See, Alintah v. National Grange, No. CV95 014 65 71 S,1997 Ct. Sup. 4763 (Apr. 24, 1997)
The presumption in the instant case is that if the insured gets injured or incurs property damage at the hands of an uninsured motorist she will be indemnified by the insurer to whom she has been paying premiums. In short, premiums are paid to be used later as an offset. They do not expect the policy will be ignored for the financial benefit of the insurance company and that the coverage or benefits they are entitled to depends on the force of the collision.
The insurer-insured relationship discloses an insurance companies' function to protect society. In Joseph v. HannanAgency, Inc., No. 32 33 10, 1997 Ct. Sup. 17 (Jan. 9, 1997), the CT Page 15560 court held:
 Taking the facts as true, it is against the public policy of CUTPA for an insurer to accept several premium payments, make statements to the plaintiffs that General Liability . . . insurance policies had been secured on their behalf, and produce a Certificate of Insurance purporting to provide the plaintiffs with coverage when then and now, the plaintiffs were not covered by any such insurance policies.
This rationale is comparable to the instant case. The plaintiff believed at all times that a policy was issued in return for her premiums that covered damage or injury sustained from an uninsured motorist — irrespective of the force involved in the accident. However, then and now, if the accident she was involved in was characterized by the carrier as a minimum property damage case, the coverage would not be provided, at least to the extent she expected by the policy terms.
In Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573,588-89 (1990), the court explained:
 "Provisions in insurance policies excepting particular losses from the coverage thereof are ordinarily valid, for the parties to a contract of insurance have the right to limit or qualify the extent of the insurer's liability in any manner. . . . [T]he word `exclusion' signifies . . . circumstances in which the insurance company will not assume liability for a specific risk or hazard that otherwise would be included within the general scope of the policy." (Citations omitted; emphasis added.)
That being said, the inverse is also true. Both parties can contract to include a particular loss as a result of which the insurer will assume liability. In the instant case, we presumably have a policy negotiated by the parties that explicitly includes
coverage for the type of accident in which the plaintiff was involved.
Further, Connecticut and all states have a public interest in providing compensation for accident victims and preventing the wholesale liquidation of familial assets which must be sold in the event of an exigency arising from a specified loss or injury.KEETON WIDISS, supra, 2, 11. The reasonable expectations of the insureds, and in some instances, third party beneficiaries, CT Page 15561 should be protected. This is especially true when the rights asserted by the claimant are in accord with the applicable insurance contract, as in the instant case. Id. at 615. Therefore, it is against public policy for an insurance company to do anything to injure the rights of its policyholders to receive the benefits of their contracts. Id. at 625. The interests of the individuals protected by this public policy include money, time, missed work, mental and physical health, etc. It would seem that these are the same interests that are supposed to be protected by insurance companies through the process of risk transference.
In addition, in recent times there has been a great movement toward effectuating alternative dispute resolution. LEONARD L.RISKIN JAMES E. WESTBROOK, DISPUTE RESOLUTION AND LAWYERS, p. 1 (American Casebook Series, 1987); see also, JON BERK MICHAEL c.JAINCHILL, CONNECTICUT LAW OF UNINSURED AND UNDERINSURED MOTORISTCOVERAGE, p. 441, n. 23 (2d ed. 1999). It is evident that many states hold it to be in the public's interest to make valid efforts to resolve disputes outside the courtroom in such ways as settlements, arbitration, and mediation. Moreover, Connecticut has a strong policy, both legislative and judicial, favoring arbitration as a means of settling disputes. Town of East Havenv. AFSCME, 212 Conn. 368, 371 (1989). The synonymy of settlement with arbitration as an alternative to litigation suggests that Connecticut also has a strong policy favoring settlement. SeeBlack v. Goodwin, Loomis and Britton, Inc., 239 Conn. 14 (1996) citing Gravson v. Wofsey, Rosen, Kweskin Kuriansky,231 Conn. 186, 174 (stating Connecticut has a strong policy favoring the pretrial resolution of disputes; cf. BERK JAINCHILL, supra 407. The plaintiff correctly observes that an insurer cannot denounce settlement and police its claims for those that involve minimum property damage because it is company policy to do so. See plaintiff's complaint, p. 2. It is indeed contrary to the present trend toward alternative dispute resolution for insurers to impose their settlement policy on the unsuspecting public.
The prohibition of such practices by insurance companies is further grounded in the contractual doctrine of detrimental reliance. KEETON WIDISS, supra, 652. That is to say, it is against public policy for an insurance company to allow a claimant, whether they be an insured or other person intended to receive benefits under the policy, to rely to their detriment on the representation that since they paid for coverage they will get coverage when a claim is made, when in fact they may get CT Page 15562 something less than they bargained for. Individuals rely on insurance coverage that they went through the painstaking process of researching, selecting and paying monthly premiums for to protect them from risk, namely physical injury and property damage. A minimum property damage rule makes such a reliance detrimental in that when the coverage they expected is denied, less than expected or has to be fought for, they suffer incredible financial losses ranging from medical expenses to replacement of essential property, such as motor vehicles.
An insurance company must be mandated to give equal, if not more, consideration to the insured's interest when making decisions concerning the settlement or litigation of a claim covered by an insurance policy. Id. at 884. The principal supporting rationale is that an insurer ought not to be permitted to favor its own interests unless it is then prepared to protect its insured by absorbing the losses which result from the implementation of its business policies. See Id. at 887; see also its discussions n. 7, Rova Farms Resort, Inc. v. Investors Ins.Co. of Amer., 323 A.2d 495, 509 (NJ 1974). A breach of the duties imposed by the fiduciary relationship between the insurer and insured is not tolerable. Therefore, it is against public policy to allow insurers to gamble with the insured's claim by refusing to settle and by making outright denials of claims. Id. This is especially true in the situation of an uninsured motorist claim considering a denial perpetuates the length of time the insured must incur financial loss and hardship. It also forces the insured to file suit and incur legal expenses.
Moreover, [t]he Courts of this state have recognized abuse of process as `a cause of action in tort whose gravamen is the misuse or misapplication of process, its use in an improper manner or to accomplish a purpose for which it was not designed.'" Sussman v. D.A.N. Joint Venture, No. CV96 056 21 63 5, 1997 Ct. Sup. 1067 (Feb. 10, 1997) citing Sheets v. Teddy'sFrosted Foods, Inc., 179 Conn. 471, 475 (1980) quoting Varga v.Pareles, 137 Conn. 663, 667 (1951); 3 Restatement (Second), Torts 682. The legal system was not designed to be used as a tool by insurers to delay or deny payment of all claims involving minimum property damage nor was it designed to help insurance companies avoid assuming liability when they are required by contract to do so. Although the plaintiff has not alleged such a tort violation, the defendant's practices amount to a violation of this policy. Thus such conduct is contrary to public policy and therefore the defendant has provided the plaintiff with alternative grounds for CT Page 15563 a CUTPA claim.
Finally, this type of abuse causes hardship in other areas of life, such as credit standing, loss of job and loss of business.KEETON WIDISS, supra, 871. In contrast, early settlement offers the advantage of avoiding the expenses of litigation, to both claimants and insureds. Id. at 996. Allowing these types of claims (minimum damage/impact) to run their routine course may actually serve as a greater deterrent to irresponsible rejection of claims. Further, imposing sanctions for the implementation of such policies even though the insurer acts reasonably in doing so, serves to compensate the insured for both the delay in receipt of payment and the costs of engaging in litigation with the insurer in order to recover. Id. at 871.
 CONCLUSION
The defendant's motion to strike Count Two of the plaintiff's complaint is hereby GRANTED because the plaintiff failed to sufficiently allege a prohibited insurance practice as required by CUIPA.
Count Three of the plaintiff's complaint is legally sufficient. It is not based on a common law bad faith claim and does not require the disposition of the underlying suit as a prerequisite. The defendant's minimum damage/impact rule is a violation of public policy for the above stated reasons and, therefore, if proven, would be an unfair trade practice under CUTPA. Accordingly, the defendant's motion to strike the third count is hereby DENIED.
MELVILLE, J.