422 So.2d 943 (1982)
Robert E. HESSON and Virginia C. Hesson, Husband and Wife, Appellants,
v.
WALMSLEY CONSTRUCTION COMPANY, a Florida Corporation, Walmsley Homes, Inc., a Florida Corporation, Thomas Walmsley, Thomas B. Walmsley, Robert Walmsley and Gareth Walmsley, Jointly and Severally, Appellees.
No. 81-1906.
District Court of Appeal of Florida, Second District.
November 3, 1982.
Rehearing Denied December 3, 1982.
Robert C. Hesson, of Hazen & Morris, P.A., Venice, for appellants.
W. Russell Snyder, Venice, for appellees.
SCHEB, Judge.
In this opinion we discuss the applicability of the doctrine of implied warranty of habitability to the sale of a new house and lot by a builder-vendor to an original purchaser.
In 1975 appellants purchased a house and lot from appellees. The house was new, having just been completed by appellees, the builders, who selected the lot and sold the house and lot as a package. A year or so later, cracks developed in the house, presumably from the house settling on the lot. Appellants sued appellees on four theories: breach of contract, fraud, negligence, and breach of implied warranty of habitability. The trial court directed a verdict in favor of appellees on the contract and fraud counts, and the case went to the jury on the counts alleging negligence and breach of implied warranty. The jury returned its verdict in *944 favor of appellees, and the trial court entered final judgment thereon. This appeal ensued.
Appellants challenge several of the trial court's instructions to the jury. The only point that merits discussion is their contention that the court erred in declining to give their requested instruction that the test for breach of implied warranty of habitability is whether the premises met ordinary, normal standards reasonably expected of living quarters of comparable kind. We reject the other points raised by appellants.
Contrary to appellants' requested instruction, the court instructed the jury that if no substantial defects existed in the construction of the house and the settlement was caused by subsurface conditions of the land, then the jury's verdict should be for the appellees. Therefore, we focus on the issue of whether the trial judge erred in not instructing the jury that the implied warranty of habitability extended to the entire package, i.e., the house and lot sold by the builder-vendor appellees.
Prior to the 1960's the rule in most states with regard to the sale of new homes was that unless there was an express warranty, absent fraud, caveat emptor applied. Caveat emptor has largely disappeared in respect to many transactions involving sales of personal property, yet the doctrines of real property law have tended to inhibit the application of implied warranties in respect to real estate transactions. See Fegeas v. Sherill, 218 Md. 472, 147 A.2d 223 (1958); 7 S. Williston, A Treatise on the Law of Contracts §§ 926, 926A (3d ed. 1963). In recent years, however, there has been a tendency for courts to hold developers who sell real property responsible for the quality of their products. See generally Note, Liability of the Builder-Vendor Under the Implied Warranty of Habitability  Where Does It End?, 13 Creighton L.Rev. 593 (1979); Note, Housing Defects: Homeowners' Remedies  A Time for Legislative Action, 21 Washburn L.J. 72 (1981).
A number of states now hold that implied warranties of fitness and habitability arise from the sale of new homes. See generally Cochran v. Keeton, 287 Ala. 439, 252 So.2d 313 (1971); Coney v. Stewart, 263 Ark. 148, 562 S.W.2d 619 (1978); Carpenter v. Donohoe, 154 Colo. 78, 388 P.2d 399 (1964); Conyers v. Molloy, 50 Ill. App.3d 17, 7 Ill.Dec. 695, 364 N.E.2d 986 (1977); Theis v. Heuer, 264 Ind. 1, 280 N.E.2d 300 (1972); Loch Hill Construction Co. v. Fricke, 284 Md. 708, 399 A.2d 883 (1979); Banville v. Huckins, 407 A.2d 294 (Me. 1979); Oliver v. City Builders, Inc., 303 So.2d 466 (Miss. 1974); McDonald v. Mianecki, 79 N.J. 275, 398 A.2d 1283 (1979); Lyon v. Ward, 28 N.C. App. 446, 221 S.E.2d 727 (1976); Yepsen v. Burgess, 269 Or. 635, 525 P.2d 1019 (1974); Bolkum v. Staab, 133 Vt. 467, 346 A.2d 210 (1975); Tavares v. Horstman, 542 P.2d 1275 (Wyo. 1975). However, a few states still refuse to decide that there are implied warranties of fitness in the sale of a new home. See P.B.R. Enterprises, Inc. v. Perren, 243 Ga. 280, 253 S.E.2d 765 (1979); Bruce Farms, Inc. v. Coupe, 219 Va. 287, 247 S.E.2d 400 (1978). Since adoption of the modern rule by an increasing number of states, the doctrine of implied warranty has been one of continuing development.
In Gable v. Silver, 264 So.2d 418 (Fla. 1972), the Florida Supreme Court held that implied warranties of fitness and merchantability extend to the purchase of new homes or condominiums from builders. Whether the warranty extended to subsurface conditions was not an issue in Gable. The following year, in Burger v. Hector, 278 So.2d 636 (Fla. 1st DCA 1973), the First District refused to extend the doctrine of implied warranty to a builder where damage to a new house was caused by the subsoil condition on the lot purchased separately by the owner.
In recent years it has become more common for purchasers of new homes to buy a package, i.e., a house and lot, from a builder rather than merely to select a lot and have a house constructed thereon. As courts have recognized this trend, many have concluded that the implied warranty of habitability is breached not only because of structural defects, but also because of the unsuitable nature of the site on which the house was built.
*945 In House v. Thornton, 76 Wash.2d 428, 457 P.2d 199 (1969), the Washington Supreme Court held that a builder-vendor who sells a new house impliedly warrants that the foundations supporting it are firm and secure, and that the house is structurally safe for the purchaser's intended purpose of living in it. This, the court noted, applied whether subsequent damage came from instability of the land, or from defects in the foundation's design or installation. The court opined:
As between vendor and purchaser, the builder-vendors, even though exercising reasonable care to construct a sound building, had by far the better opportunity to examine the stability of the site and to determine the kind of foundation to install... . [T]heir position throughout the process of selection, planning and construction was markedly superior to that of their first purchaser-occupant... . [O]f the innocent parties who suffered, it was the builder-vendor who made the harm possible.
457 P.2d at 204. See also Waggoner v. Midwestern Development, Inc., 83 S.D. 57, 154 N.W.2d 803 (1967); Mulhern v. Hederich, 163 Colo. 275, 430 P.2d 469 (1967); Glisan v. Smolenske, 153 Colo. 274, 387 P.2d 260 (1963).
In holding that the implied warranty of habitability required the builder-vendor to supply potable water from a private well, the court in Elderkin v. Gaster, 447 Pa. 118, 288 A.2d 771 (1972), also commented that a developer has the better opportunity to examine the suitability of the home site and to determine what measures should be taken to provide a home fit for habitation. Continuing, the Pennsylvania Supreme Court stated:
As between the builder-vendor and the vendee, the position of the former, even though he exercises reasonable care, dictates that he bear the risk that a home which he has built will be functional and habitable in accordance with contemporary community standards.
288 A.2d at 776, 777.
We agree with the rationale of these decisions extending the doctrine of implied warranty to a builder-vendor of a new house and lot sold as a package to the original purchaser. As noted, the builder-vendor is in a better position than the buyer to investigate the quality of the land to support the house. In most instances the builder is the professional, the buyer the amateur. Moreover, we believe that by placing the risk of furnishing the buyer a functional home on the builder-vendor, the builder will be encouraged to exercise greater care in selection of building sites. From an economic standpoint the builder-vendor can more readily handle the risk of subsurface defects and can more effectively cover these risks at a lesser cost than a purchaser.
In fairness to the trial court, we note that there were previously no Florida decisions which focused directly on the scope of implied warranties within the context of this case. Nevertheless, we have concluded that the trial court erred in failing to instruct the jury that the implied warranty of habitability extends to the entire package offered by the builder-vendor, including the house and lot.
The test for a breach of implied warranty is whether the premises meet ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality. Putnam v. Roudebush, 352 So.2d 908 (Fla.2d DCA 1977). We hold there is an implied warranty of habitability in the package sale of a new house and lot by a builder-vendor to an original purchaser. Of course, the implied warranty extends only to conditions in existence at the time of sale, as it would be unfair to hold a builder-vendor liable for defects caused by conditions occurring subsequent to sale, e.g., natural catastrophies, such as earth tremors and sink holes. Further, this holding does not extend to lots owned by the purchaser on which the builder constructs a house, i.e., Burger v. Hector, or to the sale of used homes. Strathmore Riverside Villas Condominium Association v. Paver Development Corp., 369 So.2d 971 (Fla.2d DCA 1979).
*946 One final point should be mentioned. Disclaimers under the Uniform Commercial Code cannot apply here since the seller is not a "merchant," and the house and lot are not "goods" within sections 672.104 and .105, Florida Statutes (1981). See Gable v. Silver. However, we know of no reason why parties to a contract cannot mutually agree on the reallocation of risks such as subsurface conditions if the disclaimer is in clear and unambiguous language and clearly reflects both parties' expectations as to what items are not warranted. See Sloat v. Matheny, 625 P.2d 1031 (Colo. 1981); Note, Housing Defects: Homeowners Remedies  A Time for Legislative Action, at 88.
We reverse the judgment for the appellees on the breach of implied warranty count; otherwise, we affirm. We remand for a new trial on the issue of implied warranty consistent with the views expressed in this opinion.
GRIMES, A.C.J., and SCHOONOVER, J., concur.