21 Mass. App. Ct. 60 (1985)
484 N.E.2d 644
MICHAEL WOLOV & others[1]
vs.
MICHAUD BUS LINES, INC.; ROYAL GLOBE INSURANCE COMPANY, third-party defendant.
Appeals Court of Massachusetts, Essex.
September 18, 1985.
October 29, 1985.
Present: KASS, KAPLAN, & SMITH, JJ.
Catherine A. White (Thomas D. Burns with her) for Michaud Bus Lines, Inc.
Thomas D. Dolan for Royal Globe Insurance Company.
KAPLAN, J.
This appeal is an occasion for renewing the theme of the Gilbane and Sterilite cases[2] regarding the extent of the obligation of a liability insurer to defend claims that are asserted by third persons against the insured.
The North Shore Jewish Community Center in Marblehead ran a daily summer camp named Camp Simcha in Middleton. *61 It arranged by contract with Michaud Bus Lines for the transportation of the young campers to and from the camp. At 8:13 A.M., July 8, 1975, Eric Wolov, aged six, was waiting at the corner of Atlantic and Sea View Avenues, Marblehead, for the Michaud bus, due to arrive at that time for pickup. The bus was grievously late. As Eric lingered at the corner, a car drew up, an occupant evidently invited Eric to board, Eric did so, and the car drove off. He had been kidnapped. This happened under the eye of Judith Wolov, Eric's mother, who was keeping Eric in view from the window of her house, 125 feet away. Ransom money was demanded. By good fortune, Michael Wolov, the father, was able at risk to himself to retrieve the boy later that day. The kidnapper was apprehended.
On July 8, 1977, Michael and Judith and Eric (by Michael as next friend) commenced an action in Superior Court against Michaud Bus Lines[3] alleging the foregoing and demanding damages for their injuries arising, so the complaint charged, from Michaud's failure to provide the bus on time. The complaint was in eight counts entitled, respectively, breach of contract, breach of warranty (evidently under the Uniform Commercial Code), negligence, gross negligence, breach of the highest degree of care, wilful and wanton conduct, misrepresentation and fraud, and false and deceptive practices. Michaud notified its liability carrier, Royal Globe Insurance Company, of the claim, but Royal Globe did not respond. After the action had gone to default through the failure of the defendant Michaud to answer or move, with Royal Globe still unresponsive, Michaud engaged counsel, who succeeded in removing the default. Thereupon counsel moved under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), to dismiss the action for failure to state a claim. A judge, without opinion, allowed the motion as to all counts except the first, that on "contract." Neither the Wolovs nor Michaud requested a determination *62 pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), to allow interlocutory appeal.
Michaud, then, under Mass.R.Civ.P. 14(a), 365 Mass. 760 (1974), as defendant/third-party plaintiff, impleaded Royal Globe, as third-party defendant, seeking, in effect, a declaration that Royal Globe was bound to provide "defense and indemnification." Royal Globe moved for summary judgment dismissing the third-party complaint. Profert was made of the liability policy. A judge allowed the motion, also without opinion, and Michaud takes its appeal from the judgment, a rule 54(b) determination regarding this judgment having been obtained. We reverse the judgment.
The policy  a "Comprehensive General Liability" policy  is in familiar form. Under "Insurance Agreements" at the head of the policy, we find: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of Coverage A bodily injury ... to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury ... even if any of the allegations of the suit are groundless, false or fraudulent ..."
Royal Globe does not dispute that the alleged casualty by kidnapping was an occurrence, as defined,[4] and it has now acted on the assumption, which is a reasonable one, that bodily injury is sufficiently adumbrated in the Wolovs' complaint and thus it had some duty to defend.[5] It is presumably on that basis that Royal Globe has paid the fees of counsel for Michaud for services through the rule 12(b)(6) motion.
On the assumption indicated, and in the absence of a relevant "exclusion," the duty to defend exists regardless of the legal *63 theory manifested in the Wolovs' lawsuit  whether it be negligence or warranty or something else  and regardless of the soundness of the theory or its chances of final success. The process of deciding "the question of the initial duty of a liability insurer to defend third-party actions against the insured" consists of "envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." Gilbane, 391 Mass. at 146-147, quoting from Sterilite, 17 Mass. App. Ct. at 318. We think the initial duty exists here.
Royal Globe contends, however, that there is an "exclusion" peculiarly applicable to the remaining count entitled in "contract." The policy states: "This insurance does not apply: ... to liability assumed by the insured under any contract or agreement ...[6] but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner." First, common sense, as well as decided cases, suggest that in the present policy the clause "liability assumed by the insured under any contract or agreement" probably refers to arrangements very different from the transportation contract between North Shore and Michaud; the interpretation urged by Royal Globe would greatly reduce the protection afforded to Michaud on its ordinary operations which no doubt arise often from agreements of some kind.[7] Second, if that clause could be read, standing alone, to reach the North Shore-Michaud contract, then that contract would be withdrawn from the clause  as an exception to the exclusion  by the language about a "warranty" that the work performed *64 by the insured "will be done in a workmanlike manner" (including timely performance). Such a common-law warranty would be implied in the contract even though not expressed in terms,[8] and the insurer's duty to defend would run to claims of third persons for bodily injury allegedly occasioned by breach of the warranty. Thus the contract-exclusion provision furnishes no refuge for Royal Globe.[9]
We need to distinguish sharply the case of Bond Bros. v. Robinson, 393 Mass. 546 (1984), where a majority of the court held that a certain specific exclusion set out in a "General Liability Multi/Cover Endorsement" controlled, so as to supersede and nullify the warranty of fitness of the insured's product which appeared as an exception to a contract-exclusion provision similar to that contained in the present policy. There is no endorsement or other provision of the present policy that embodies any such superseding exclusion.[10]
Reading Royal Globe's brief one gets the impression that its refusal to defend is tied somehow to its belief that the *65 Wolovs are advancing a foolish claim that must fail in the end if for no other reason than that a sufficient causal connection cannot be established between the lateness of the bus and Eric's temporary disappearance. The claim may indeed collapse. But it would be a strange perversity that would leave it to the insured to deal at its own expense with claims that should be easiest to defend. There is no such "deductible" in the policy.
We decide that Royal Globe is bound to defend the Wolovs' action. We do not peer into the future to consider what its ultimate responsibility may be if the Wolovs' action should be prosecuted to the end: the insurer's duty to defend third-person claims is "distinct from and of broader scope than the further obligation to indemnify the insured against judgments obtained against it within the policy coverage." Sterilite, 17 Mass. App. Ct. at 318 n. 4; Shapiro v. Public Serv. Mut. Ins. Co., 19 Mass. App. Ct. 648, 653 (1985). Nor need we decide whether Royal Globe could be held responsible for the legal expenses cast on Michaud by its having to establish Royal Globe's duty to defend through the present third-party complaint and appeal. See Sterilite, at 325 n. 20.
Judgment reversed.
NOTES
[1] Judith Wolov and Eric Wolov (by his father Michael Wolov as next friend).
[2] Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143 (1984). Sterilite Corp. v. Continental Cas. Co., 17 Mass. App. Ct. 316 (1983).
[3] An officer of Michaud was joined as a party defendant but he was ordered dismissed from the action and we need not refer to him further.
[4] "`[O]ccurrence' means an accident, including injurious exposure to conditions, which results ... in bodily injury ... neither expected nor intended from the standpoint of the insured."
[5] "`[B]odily injury' means bodily injury, sickness or disease sustained by any person." In addition to the injuries alleged to have been suffered by all the plaintiffs  physical strain and mental and emotional distress  we may note that the boy Eric was the victim of trespass and false imprisonment as elements of the kidnapping.
[6] The words omitted here are "except an incidental contract," so defined elsewhere as to be irrelevant.
[7] The quoted clause has been taken to refer to "liability incurred when one promises to indemnify or hold harmless another." See Olympic, Inc. v. Providence Wash. Ins. Co., 648 P.2d 1008, 1011 (Alaska 1982), and authorities cited. See also the dissent in Olympic, in agreement on this point. The clause may refer to other contracts similarly extraneous.
[8] "When a party binds himself by contract to do a work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it." Abrams v. Factory Mut. Liab. Ins. Co., 298 Mass. 141, 143 (1937); see also Previews Incorporated v. Everets, 326 Mass. 333, 335 (1950).
[9] Royal Globe argues that the dismissal of the seven counts of the complaint establishes as "the law of the case"  Shall we say, until and unless that dismissal is reversed?  that there can be no recovery against Michaud in "tort"; hence only a "contract" recovery is now in question; and the "exclusion" cuts off such recovery. It is very hard to attach meaning to this use of the expression "law of the case." The insistence here on a sharp separation between "tort" and "contract" recoveries appears unjustified if not impossible, cf. note 8, supra. But if we accept "contract" as a neat category, the exclusion is either wholly inapposite or succumbs to its own exception, as we have indicated.

Royal Globe suggests also that damages in strict contract do not ordinarily extend to personal injury caused by chagrin that a party has committed a breach. But a contract may itself promise freedom from personal injury  as the Wolovs contend here  and breach of such a promise is compensable. See Farnsworth, Contracts § 12.17, at 894-895 (1982); Olympic, Inc. v. Providence Wash. Ins. Co., 648 P.2d 1008, 1012 n. 8 (Alaska 1982).
[10] We should add that the coverage denied in Bond Bros. was for a liability allegedly owed by the insured to the company to which the warranty was given, not a liability claimed by the usual third person.