**In re BARRETT HOME CORPORATION, f/k/a Arthur Rutenburg Corporation, Debtor.**

**Bankruptcy No. 91–9037–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 29, 1993.

---

1. On two (2) of Peterson's 1040 forms, Mrs. Peterson lists her occupation as "housewife."

Harley E. Riedel, Tampa, FL, Daniel L. Moody, Sp. Counsel, St. Petersburg, FL, for debtor.

Jay Verona, St. Petersburg, FL, for Claimant.

John Goldsmith, Tampa, FL, for Cred. Comm.

Edward D. Foreman, St. Petersburg, FL, for Kalcks.

### ORDER ON DEBTOR'S MOTION TO ESTIMATE CLAIM

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 reorganization case and the matter under consideration is a Motion filed by Barrett Home Corp. (Debtor) to Estimate Claim Numbers 102 and 166 filed by Charles R. and Maria R. Kalck (Kalcks). Claim # 102 was filed on March 13, 1992, and Claim # 166 was filed on May 15, 1992.

The claimants contend that the lot and home they purchased from Rutenburg–Jaghab Ltd., a Florida limited partnership, (RJL), of which the Debtor, f/k/a Arthur Rutenburg Corporation, was a general partner, were developed and constructed in such a manner

as to allow flooding of the premises during prolonged periods of rain. The Claimants allege this constitutes a breach of warranty for which the Debtor is liable for the cost of corrections necessary to eliminate the flooding conditions. The Debtor disputes the amount of the claim and requests the Court to estimate the proper amount. The pertinent facts as established by the record and at the evidentiary hearing are as follows:

On June 30, 1986, the Claimants entered into a contract with RJL to purchase a lot located at 144 Woodside Court, Weatherside Subdivision, in Safety Harbor, Florida. Sale price for the lot was $72,000.00. In a separate transaction on the same date, the Claimants entered into a contract with RJL for the construction of a home for $234,234.00 on the same lot. This contract included an expressed "Limited Warranty" that provided for specific warranty rights "in exclusion of, and in lieu of, all other guarantees or warranties, written or oral, save and except all manufacturer's guarantees or warranties which shall be in force according to their own terms."

The construction of the Claimant's home was completed in December of 1986. In March of 1987, three months after the Claimants moved into their new home, heavy rains resulted in flooding of the cul-de-sac, driveway, front and back yards, garage, and sunken living room of the residence. Similar subsequent incidents of flooding occurred in July of 1987, August of 1988, September of 1989, and twice in July of 1990.

Based on the subdivision site plan elevations, it is undisputed that the finished floor elevations of the living area and the garage of the Claimant's home is lower than required by as much as 11 inches. Houses subsequently constructed by the Debtor on either side of the Claimant's home were built some 18 inches higher at finished floor elevation. Additional fill was brought in to elevate these homesites during construction, while none had been brought in for the Claimant's lot. As a result of the Claimant's house being constructed lower than the anticipated design elevations, the house, garage, driveway and yard are subject to flooding during periods of heavy rains.

It is well documented that the Claimants have not incurred any out of pocket expenses as a result of floodwater intrusion into their home and onto the property. All such expenses have been borne by RJL and/or the Debtor, therefore no such damages are a part of this claim. The Claimants propose that the appropriate remedy to correct their home's susceptibility to flooding would be to raise the structure to its proper design elevation, at a cost of $159,000.00, which with an allowance for accrued interest from the date of the initial occurrence would total in excess of $259,900.00.

It was also determined that modifications could be made to the existing stormwater drainage system in the immediate vicinity of the Claimant's home to address the flooding problem. These modifications could be implemented for $30,000.00. In addition, recommendations were made to increase the size of the pipe running from the catch basin in front of the Claimant's home to the main drain pipe. This modification would cost an additional $10,000.00. Together, these modifications would purportedly compensate for the fact that the house was built lower than it should have been.

Based upon these facts, the Debtor objects to the amount of the claim filed by the Kalcks and requests that the court estimate the amount of the claim pursuant to 28 U.S.C. § 157, which provides in part as follows:

§ 157   Procedures

.      .      .      .      .

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

.      .      .      .      .

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of

claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation of estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

.　　.　　.　　.　　.

State substantive law is to be applied to determine the existence and validity of a claim in bankruptcy, unless the Bankruptcy Code provides otherwise. *In re Jones*, 72 B.R. 25 (Bankr.C.D.Cal.1987). By constructing the Claimant's home at an elevation that allows flooding and water intrusion into the house and property as experienced in this case, the Debtor breached both an expressed limited warranty and an implied warranty of habitability with the Claimants. An implied warranty of habitability exists in Florida as to both the house and lot sold as a package by the builder-developer. *Hesson v. Walmsley Construction Company*, 422 So.2d 943 (Fla. 2d D.C.A.1982). While the Debtor argues that "separate" transactions for the lot and the home make *Hesson* inapplicable in this case, this Court holds otherwise. When a builder-developer markets and sells both the building lot and the home to be built on that lot in the same marketing effort, on the same day, albeit in separate transactions, it is clear that a package deal results ... the lot, as developed by the seller, as well as a home to be built by the seller on the same lot. The fact that the package is a result of separate transactions by the same builder-developer as described is not enough to preclude the existence of an implied warranty of habitability as established in *Hesson*.

The test for breach of an implied warranty of habitability is whether the premises meet "ordinary, normal standards reasonably to be expected of living quarters of comparable kind and quality." *Id.* at 945. A home which is built so low that it floods in the manner experienced by the Claimants is not a normal standard reasonably to be expected for homes of this kind and quality.

The Debtor contends that the disclaimer in their expressed limited warranty

circumvents any implied warranty. While an implied warranty can be avoided by a disclaimer in the documents of the sale transaction, it does not appear that this has occurred here. The disclaimer used by the Debtor applies specifically to "all other warranties, *written* or *oral*". No reference is made to implied warranties, so we make no inference that they were to be disclaimed as well.

The proper measure of damages for a construction defect is the reasonable cost of repair or cost of correcting the defective condition where correction of work does not involve unreasonable destruction of work originally done and cost is not grossly disproportionate to the results obtained. *Temple Beth Sholom and Jewish Center, Inc. v. Thyne Construction Corporation*, 399 So.2d 525 (Fla. 2d D.C.A.1981). Physically raising the home would require substantial destruction and reconstruction of the foundations, foundation walls, floor slabs, and under-slab utility connections. At a base cost of $159,-000.00, this effort would be grossly disproportionate to the result obtained, when modifications to the Claimant's drainpipe and the stormwater system would alleviate the problem of flooding for a cost of $40,000.00, based upon reasonable costs to modify the stormwater drainage system and to increase the size of the drainpipe from the Claimant's front catch basin to the main drain line.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Motion to Estimate Claim be, and the same is hereby, granted and the Court finds that Claims # 102 and # 166 are estimated to be in the amount of $40,000.00 and the Claimants are entitled to an unsecured claim in the amount of $40,000.00 for the purpose of voting and not for distribution.

DONE AND ORDERED.