Welch, J.
This action arises out of the plaintiffs’ purchase from the defendants of two condominia located in Rockport, Massachusetts. Contracts for the construction and sale of these homes were executed between the defendants and the plaintiffs Brewers and Parisis respectively on December 29, 1993 and February 14, 1995. The sewage of both homes was to be disposed of and treated in on-site septic systems.
In August 1995, the Brewers began experiencing problems with their septic system; water backed into their home, and sewage fouled an outside area. The Parisis subsequently experienced similar problems. In April 1998, after failing to secure the assistance they desired from the defendants, the Brewers and Parisis retained the services of an engineering firm to inspect their property. The inspection revealed fundamental irregularities with the septic systems. The plaintiffs filed this action on May 15, 1998.
The complaint, amended in October 2000, asserts five counts; breach of express and implied warranties; fraud; intentional violation of the state sanitary code; negligence; and violation of G.L.c. 93A. The matter is before the court on cross-motions for summary judgment on all counts. For the following reasons, the defendants’ motion is ALLOWED in part and DENIED in part. The motion of the plaintiffs is DENIED.
BACKGROUND
In October 1985, the defendant, Stanley Poole (“Mr. Poole”), as trustee of the Quarry Town Realty Trust (“Trust”), undertook the development of a seven and one half acre tract of land in Rockport, Massachusetts. The purpose of this development was the construction of the Frank Street Extension subdivision; seven lots, on each of which was to be built a two or three residence condominium. Essential to this construction was some method of sewage disposal. To this end, the Trust applied for and received from the Rockport Board of Health (“Board”) permission to install on Lot #3 the two septic systems that are the subject of this action. The defendant Poole Construction Company, Inc. (“PCC”) was the named installer of the systems.
Plans submitted with the Trust’s application placed the septic systems in what are now the front yards of the Brewers’ and Parisis’ properties. However, shortly after commencing the systems’ installation in these locations, PCC encountered bedrock. At the urging of John Twomey (“Mr. Twomey”), an agent of the Board on-site at the time, PCC dug an exploratory test pit 40 feet west of the locations indicated on the plans. Based upon the results of this dig, Mr. Twomey approved the relocation of the septic systems to the test pit area. This relocation placed the Brewers’ and Parisis’ systems less than twenty-five feet from a subsurface drain and less than ten feet from their property lines, the minimum distances required by the 1978 and 1986 versions of 310 Code Mass. Regs. §15.03(7) and 310 Code Mass. Regs. §15.211 of the 1995 Code. In spite of these irregularities, the systems were installed, and *98 Mr. Twomey issued PCC with the requisite certificates of compliance. This certification has since twice been ratified by the Board’s approval of the systems in 1989 and 1999.
Following the installation of the septic systems, the Brewers, on December 29, 1993, and the Parisis, on February 14, 1995, respectively entered into contracts with the Trust for the purchase and sale of condominium units #l and #2 on Lot #3 of the Frank Street Extension subdivision. Appended to both agreements were contracts with PCC for the construction of the condominia. These documents comprise the written portions of the plaintiffs’ contracts with the defendants. The plaintiffs, however, contend that the defendants also orally warranted the condominia for a period of one year, a contention the defendants vehemently dispute.
In August 1995, the plaintiff Brewers began having problems with their septic system. Liquid from the system backed up into their home, and Its leach pit, which should leach dry, was always full and emitted a potently unpleasant odor. In addition, the Brewers’ system required pumping in excess of four times a year, a rate at which the system is considered “failed” under 310 Code Mass. Regs. §15.303(l)(a)(5). The Parisis have experienced similar problems with their system.
In April 1998, following the defendants’ failure to remedy the plaintiffs’ systems to their satisfaction, the Brewers and Parisis retained the services of Peter Ogren (“Mr. Ogren”), an engineer and surveyor. Mr. Ogren visited the plaintiffs’ properties on two occasions, performing a battery of tests. In a report dated May 11, 1998, Mr. Ogren cited a number of irregularities with the plaintiffs’ septic systems. The report concluded that, on several grounds, the systems failed to meet the minimum standards required by Title v. of the State Environmental Code. On May 15, 1998, the plaintiffs filed their initial complaint in this action.
DISCUSSION
I. Summary Judgment Standard
This court grants summary judgment when there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating these elements. Pederson v. Time, 404 Mass. 14, 17 (1989). A party moving for summary judgment who would not bear the burden of proof at trial may demonstrate an absence of triable issues by either submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party would have no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). To overcome a summary judgment motion, the nonmoving party must articulate specific facts establishing the existence of a genuine issue of material fact. Pederson v. Time, 404 Mass. at 17. Bare assertions or conclusions regarding an individual’s understandings and assumptions are insufficient to withstand a well-pleaded motion for summary judgment. Polaroid Corp. v. Rollins Envtl. Servs., 416 Mass. 684, 696 (1993).
In the instant case, the defendants seek summary judgment on every count raised in the plaintiffs’ amended complaint. Accordingly, the court will address their motion by examining each count in turn. The court will conclude with a brief review of the plaintiffs’ cross-motion.
II. Breach of Express and Implied Warranty
A. Express Warranty
Express warranties promise that a specific result will be achieved. Coca-Cola Bottling Co. of Cape Cod v. Weston & Sampson Eng'rs, Inc., 45 Mass.App.Ct. 120, 128 (1998). Thus, under an express warranty, the standard of performance is set by a defendant’s statements, rather than imposed by law. Anthony’s Pier Four, Inc. v. Crandall Dry Dock Eng’rs, Inc., 396 Mass. 818, 822 (1986). In the instant case, the plaintiffs contend that the defendant, Mr. Poole, expressly warranted the Brewers’ and Parisis’ condominia for one year. The defendants’ denial of this contention creates a genuine factual issue. The defendants advance two arguments to refute its materiality. See Beaty v. NP Corp., 31 Mass.App.Ct. 606, 607 (1991) (“That some facts are in dispute will not necessarily defeat a motion for summary judgment. The point is that the disputed issue of fact must be material.”). Id.
The defendants first contend that a clause in the plaintiffs’ purchase and sale agreements (“P&S”) forecloses reliance on any warranties previously made.[3] Decisions of the Commonwealth’s appellate courts cast doubt upon this theory. In Sheehy v. Lipton Ind., Inc., 24 Mass.App.Ct. 188, 193 (1987), the Appeals Court held that a P&S clause similar to the one at issue could not assist the defendant in obtaining summary judgment on a count of negligent misrepresentation. The Appeals Court reasoned:
The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact aire false but for which he would not have made the agreement.
Id., quoting Bates v. Southgate, 308 Mass. 170, 182 (1941); see also Carleton v. Timpone, 2000 Mass.App.Div. 83, 85 (same); and Ajalat v. Cohan, 1998 Mass.App.Div. 266, 268 (same). The reasoning of the Appeals Court is equally applicable to the breach of express warranty claim at issue here. For this *99 reason, summary judgment is inappropriate on the strength of the defendants’ first argument.
The defendants next argue that the doctrine of merger precludes a claim for breach of express warranty. The merger doctrine holds that the acceptance of a deed by the purchaser of real property discharges the seller of all contractual duties except those embodied in the deed itself. See Pybus v. Grasso, 317 Mass. 716, 717 (1945); and Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 441-42 (1975). In the instant case, the doctrine is set out in clause #13 of the P&S which is stated here in the margin.[4] However, to the general rule of merger the Commonwealth’s appellate courts have fashioned an exception in cases, like the one at bar, wherein the seller not only promises to convey property but also agrees to build upon it. See Solomon v. Birger, 19 Mass.App.Ct. 634, 642 (1985), citing Lipson v. Southgate Park, Corp., 345 Mass. 621, 625-26 (1963); Holihan v. Rabenius Builders, Inc., 355 Mass. 639, 642 (1969); and McMahon v. M&D Builders, Inc., 360 Mass. 54, 59-60 (1971).
In McMahon v. M&D Builders, Inc., the case most factually allied with the instant action, the plaintiffs sought to rescind a purchase of realty by dint of a seller’s false oral representations about the quality of a nearly completed house. 360 Mass. at 57. The Supreme Judicial Court held that, under these circumstances, an agreement collateral to the promise to convey did not necessarily merge with the deed, notwithstanding the existence of a merger clause. McMahon v. M&D Builders, Inc., 360 Mass. at 59-60.[5] The Court concluded that, in light of the defendant denying his utterance of any representation of quality, genuine issues of material fact existed that would preclude the dismissal of the case. The similarity of McMahon to the case at bar requires a like conclusion.
B. Implied Warranty
Implied warranties are those imposed by law. Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng’rs, Inc., 396 Mass. at 822. In their complaint, the plaintiffs argue that, by legal implication, the defendants warranted their septic systems to be up to code, of merchantable quality, and fit for their ordinary purpose of disposing and treating sewage. The defendants counter that as the only Massachusetts statute to recognize these warranties is Article 2 of the Commonwealth’s version of the Uniform Commercial Code (“UCC”), codified at G.L.c. 106, §2-101 et seq., and that as this statute applies only to the sale of goods, it follows that the aforementioned implied warranties can offer no protection to one unhappy with a contract for the construction and sale of structures attached to realty. See White v. Peabody Constr. Co., Inc., 386 Mass. 121, 131-32 (1982) (holding contracts for the construction or sale of a completed building fall outside the UCC).
Exclusion from Article 2, however, does not preclude the application by analogy of its policies and principles to the common law.[6] Neither does it preclude the independent development of an implied warranty from evolving common law principles. Indeed, courts in a majority of states now hold that an implied warranty arises in the sale of new homes by their builder-vendor. See Shisler v. Frank, Nos. 972310 to 97-2312, 1998 WL 255206 at *4 (Wis.App. May 21, 1998) (noting that 29 states have reached this conclusion); see also James G. Hodge, Jr., Annotation, Breach of Warranty in Sale, Installation, Repair, Design, or Inspection of Septic or Sewage Disposal Systems, 50 A.L.R. 5th 417, 448-57 (1997) (citing cases that both admit and deny the existence of implied warranties in contracts for the construction of septic systems)). To date, however, the issue has not properly come before the Commonwealth’s courts.[7] It behooves this court, therefore, to examine those cases whose core issues are sufficiently related to the one at bar that they may, by analogy, provide guidance.
Under the common law, the general rule in the sale or leasing of real estate was one of caveat emptor.[8] See Walsh v. Smidt, 206 Mass. 405, 407 (1910); McCafferty v. Lewando’s French Dyeing & Cleansing Co., 194 Mass. 412, 413-14 (1907); and Cutter v. Hamlen, 147 Mass. 471, 475 (1888) (Holmes, J.). These cases were predicated on the assumption that the essence of all real estate transactions inhered in the conveyance of land and not the premises thereon. See Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 188-89 (1973). Though this rule made sense in a rural agrarian society, with the urbanization that accompanied the industrial revolution, its strict application worked harsh results on those city-dwelling vendees and lessees whose principal interest was no longer in the land but in the housing built upon it. This shift in societal priorities was recognized by the Commonwealth’s courts in two decisions more than 80 years apart.
In Ingalls v. Hobbs, 156 Mass. 348, 350 (1892), the Supreme Judicial Court found, by implication, a warranty of habitability in short-term leases of furnished residential property. The decision for the first time recognized that under some circumstances, a party’s principal interest in a lease might not be in the land but in the immediate occupancy of a building upon it. The doctrine of caveat emptor was, nevertheless, still applied to those leases that fell outside Ingalls’s narrow scope. See, e.g., Stone v. Sullivan, 300 Mass. 450, 454-55 (1938). In Boston Hous. Auth. v. Hemingway, 363 Mass. at 191-97. however, the Court, inferred from a landlord’s statutory duty to comply with the Commonwealth’s Sanitary Code a legislative intention that tenants should only pay rent for habitable premises, and concluded that the caveat emptor doctrine had outlived any purposeful use. Accordingly, the Court broadened the scope of Ingalls to imply in all residential leases a warranty of habitability. Id. at 199.
The rationale of the Court in Ingalls and later Hemingway is readily applicable to the case at bar. The *100 primary interest of the plaintiffs here, like those above, is not in the land conveyed but in finding upon it an objectively habitable home, i.e. one complying with all relevant building codes. In Hemingway, the party responsible for bringing the property up to code was the landlord. In the instant case it is the builder. Given the foregoing, it is logically as unacceptable for a builder-vendor to construct and sell an uninhabitable dwelling as it would be for a landlord to lease it. This court, accordingly, finds by implication a nondisclaimable[9] warranty of habitability[10] in the sale of a completed dwelling by its builder-vendor.[11]
Under this warranty, the existence of a material breach is a question of fact to be determined on a case by case basis. See Boston Hous. Auth. v. Hemingway, 363 Mass. at 200. For this reason, the defendants’ motion for summary judgment on this count cannot be allowed.
III. Fraud
To sustain a claim of fraud or deceit, a plaintiff must prove that a defendant knowingly made to the plaintiff a false statement of fact which induced the plaintiff to act in reliance upon it to his or her detriment. McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 575 (1995). The plaintiffs in this case ground their claim of fraud on statements made by the defendants to the Board and the plaintiff Parisis’ bank. The defendants counter that as these statements were not made directly to the plaintiffs, no claim of fraud can lie. The issue is, therefore, whether the court may infer from the defendants’ statements to others an intent to deceive the plaintiffs. It is an issue with which the Commonwealth’s courts are not entirely unfamiliar.
In Hunnewell v. Duxbury, 154 Mass. 286, 287-88 (1891), the Supreme Judicial Court ruled against a plaintiff who grounded his claim of fraud on the statements of a firm in its statutorily prescribed filing with the Commonwealth’s commissioner of corporations. The Court held that for such statements to be actionable, they “must either have been made to the plaintiff individually ... or have been intended to influence his conduct in the particular of which he complains.” Id.; see also Van De Velde v. Coopers & Lybrand, 899 F.Sup. 731, 738 (D.Mass 1995) (“A claim of fraud and deceit in Massachusetts should ordinarily be dismissed unless it pleads actual reliance by the named plaintiffs . . .”). Id.
In the instant case, both Hunnewell and Van De Velde strongly suggest that the defendants’ statements to the Board should not give rise to a count of fraud. Here, as in Hunnewell, the statements were required by a governmental body and were made to secure from that body the permission necessary to further the defendants’ business goals. It would thus be illogical to impute to these statements an intention to improperly influence anyone other than the Board itself. The same, however, cannot be said about the defendants statements to the Parisis’ lender. These statements were made with a reasonable expectation, if not knowledge, that they would be repeated to the Parisis who would in all likelihood act in reliance upon them. Cf. Pamela Amusement Co. v. Scott Jewelry Co., 190 F.Sup. 465, 468 (D.Mass. 1960) (different conclusion where the defendants’ statements could not reasonably be expected to influence the plaintiff). Accordingly, while the plaintiffs count of fraud cannot go forward on the defendants’ statements to the Board, it can proceed on their statements to the Parisis’ lender.
An additional argument by the plaintiffs that the defendants’ nondisclosure of irregularities with their septic systems amounts to fraud by silence is without foundation. See Swinton v. Whitinsville Sav. Bank, 311 Mass. 677, 678-79 (1942) (proof of a bare nondisclosure, or the failure to speak where there is no duty to do so is insufficient to establish a count of fraud or deceit); Solomon v. Birger, 19 Mass.App.Ct. at 639 (involving the nondisclosure of cracks in a basement floor); and Urman v. South Boston Sav. Bank, 424 Mass. 165, 168 (1997) (“Silence does not constitute a basis for claiming fraud and misrepresentation even where a seller may have knowledge of some weakness in the subject of the sale and fails to disclose it”). Id.
IV. Intentional Violation of the State Sanitary Code
General Laws c. 111, §127A provides that enforcement of the State Sanitary Code shall be by the local boards of health. In addition, G.L.c. 111, §127C provides that tenants may enforce the Code by petitioning the district court, housing court, or superior court. There is, however, no comparable statutory remedy available to homeowners. See generally Van Scoyoc v. Board of Health of Sherborn, 4 Mass.App.Ct. 97, 101 (1976) (a homeowner cannot, by writ of mandamus, compel a board of health to exercise its discretionary enforcement powers against a builder-vendor). For this reason, summary judgment may enter in the defendants’ favor on the third count of the amended complaint.[12]
V. Negligence
Under Massachusetts law, recovery in negligence is precluded for claims asserting economic losses absent physical injury to person or property. Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 305 (1993). The defendants contend that, under this rule, the plaintiffs’ assertion of purely economic losses requires that its count of negligence fail as a matter of law. This contention is not, however, born out by the plaintiffs pleadings, affidavits, and other supporting materials which together allege physical property damage sufficient to state a cause of action for negligence. Compare, e.g. Ex. 7 in Supp. of Pis.’ Opp’n to Defs.’ Mot. for Summ. J. at 2 and accompanying photographs (”[T]he area of plaintiffs’ septic tanks and the ground water drain often reeks of sewerage [sic] . . .”), with McDonough v. Whalen, 365 Mass. at 513 (“[T]he plain *101 tiffs did suffer physical damage to their property in the form of sewage flowing over their land”). Id. The “economic loss doctrine” is, thus, inapplicable to the instant case because the plaintiffs’ monetary losses are derived from the alleged physical harm to their property for which they have a right to recover. Priority Finishing Corp. v. LAL Constr. Co., Inc., 40 Mass.App.Ct. 719, 721 (1996). Accordingly, summary judgment cannot enter in the defendants’ favor on this count of the amended complaint.
VI. Violation of G.L.c. 93A
At the March 1, 2001 hearing on these motions, the defendants withdrew their motion for summary judgment on this count of the amended complaint.
VII. The Plaintiffs’ Cross-Motion for Summary Judgment
At the conclusion of their opposition to the defendants’ motion for summary judgment, the plaintiffs purport to make a cross-motion for summary judgment on all counts. The motion consists of 14 lines of text spread evenly over three paragraphs. The motion does not come close to satisfying the requirements of Sup.Ct.R.9A(b)(5).[13] For this reason, the court denies the plaintiffs’ cross-motion.[14] Id.
ORDER
For the foregoing reasons, the defendants’ motion for summary judgment under Mass.R.Civ.P. 56 is ALLOWED and DENIED as follows:
Count I (Breaches of Express and Implied Warranties) — DENIED;
Count II (Fraud) — ALLOWED in part and DENIED in part;
Count III (Intentional Violation of State Sanitary Code) — ALLOWED;
Count IV (Negligence) — DENIED-, and
Count V. (Violation of G.L.c. 93A) — DENIED (motion withdrawn).
The plaintiffs’ cross-motion for summary judgment is DENIED.

 Clause #29 of the plaintiffs’ P&S with the defendant Trust states in pertinent part: “The BUYER acknowledges that he has not relied upon any warranties or representations not incorporated in this Agreement, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker ...” (None pertinent to this action were set forth.)

 Clause #13 states in pertinent part: “The acceptance of a deed by the BUYER . . . shall be a full performance in discharge and release of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.”

 But cf. Solomon v. Birger, 19 Mass.App.Ct. at 641-42. In Solomon, the Appeals Court affirmed a decision of the Superior Court granting summary judgment in the defendant seller’s favor. In that case, however, though the merger clause was identical to the one at issue here, the property involved was not newly constructed.

 As Professor Farnsworth of the Columbia University Law School argued in an early, but oft-cited article: “[An] advantage to reasoning by analogy is that it can be used to extend implied warranties to many transactions which could not be defined as sales but which are so like other cases where warranties are implied that they should be treated similarly.” E. Allan Farnsworth, Implied Warranties of Quality in Non-Sales Cases, 57 Colum.L.Rev. 653, 668 (1957); see also Note, The Uniform Commercial Code as a Premise for Judicial Reasoning. 65 Colum.L.Rev. 880, 888 (1965) (analogy to the UCC is proper “when the case involves the same considerations that gave rise to the Code provisions!,] and an analogy is not rebutted by additional antithetical circumstances”). Id.
The blurring of the line dividing those whose actions falling within and outside the province of the UCC has been recognized by the Commonwealth's appellate courts. See McDonough v. Whalen, 365 Mass. 506, 511 (1974) (“[T]here is no sound reason to treat a builder of houses or other realty structures differently from a manufacturer of chattels”). Id.

 See McMahon v. M&D Builders, Inc., 360 Mass. at 62, stating:
The parties . . . have asked us to decide the important question whether the builder-vendor of a dwelling house impliedly warrants to the initial purchaser for occupancy (a) that the house was built in a good and workmanlike manner, (b) that it is suitable for habitation, and (c) that it was built in compliance with applicable building laws, ordinances, regulations or codes. The plaintiffs argue that there is a trend in the opinions of some jurisdictions, other than this Commonwealth, toward the implication of such warranties. To the extent that we have considered the question, we have not committed ourselves to that trend. While we may be asked to reconsider our position on this important question in an appropriate case and on a record which presents it properly, we do not believe that this is such a case.
Id. Citations omitted.

 Let the buyer beware.

 See Boston Hous. Auth. v. Hemingway, 363 Mass. at 199.

 Some jurisdictions style this implied warranty as one of habitability. See, e.g., Tusch Enters. v. Coffin, 740 P.2d 1022, 1030 (Idaho 1987). Others call it an implied warranty for fitness of purpose or intended use. See, e.g., Petersen v. Hubschman Constr. Co., Inc., 389 N.E.2d 1154, 1158 (Ill. 1979). Still others use both terms. See, e.g., Hesson v. Walmsley Constr. Co., 422 So.2d 943, 944 (Fla.Dist.Ct.App. 1982) (“implied warranty of fitness and habitability”). Id. The substance of these warranties is, however, the same. The term habitability is employed here by dint of its existing use in the Commonwealth in the context of residential leases.

 The court’s implication of a warranty of habitability in contracts for the sale of completed dwellings by their builder-vendor is supported by the analogous warranty of workmanlike conduct that is implied in all service contracts. See George v. Goldman, 333 Mass. 496, 497 (1956) (“No principle of law is more clearly established than that ‘[w]hen a party binds himself by contract to do a work or to perform a service, he agrees by implication to do a workmanlike job and to use reasonable and appropriate care and skill in doing it’ ”). Id., quoting Abrams v. Factory Mut. Liab. Ins. Co., 298 Mass. 141, 143 (1937); and Wolov v. Michaud Bus Lines, Inc., 21 Mass.App.Ct. 60, 63-64 (1985) (same). See also Solomon v. Birger, 19 Mass.App.Ct. at 642. Where, as here, there is both a deed of conveyance and a construction contract, it is reasonable for a purchaser from a builder-vendor to rely on the contractor’s possession of the skill necessary to build a habitable house; id. at 638 n. 7 (contrasting cases recognizing *102 implied warranties in property sales by builder-vendors with those denying their existence in sales between a normal vendor and vendee); and Dick v. Lussier, 1998 Mass.App.Div. 151, 153-54 (general contractor subject to implied warranty to construct home in workmanlike manner and to use materials fit for their intended purpose). This analogy is particularly apt given the modern methods of constructing and marketing new homes and the inability of the average vendee to recognize and remedy any hidden problems like, for example, an inadequate septic system that the average home inspector would not notice. See Boston Hous. Auth. v. Hemingway, 363 Mass. at 197-98; and Petersen v. Hubschman Constr. Co., Inc., 389 N.E.2d at 1157.

 While no statutory cause of action exists to permit a homeowner to recover from the intentional violation of the State Sanitary Code by a builder-vendor, the failure of a builder-vendor to comply with the Code may form the basis of a successful claim under G.L.c. 93A. See Piccuirro v. Gattenby, 20 Mass.App.Ct. 286, 290 (1985).

 The plaintiffs’ cross-motion is accompanied by neither a statement of facts in consecutively numbered paragraphs nor a statement of legal elements.

 The court’s treatment of the defendants’ motion for summary judgment, allowed on some counts and denied on others by dint of the existence of genuine issues of material fact, provides an alternative ground for denying the plaintiffs’ cross-motion for summary judgment.