PETE URMAN & another[1] vs. SOUTH BOSTON SAVINGS BANK.

Norfolk. December 3, 1996. - January 17, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, GREANEY, FRIED, &
MARSHALL, JJ.

*Deceit. Fraud. Real Property,* Sale. *Consumer Protection Act,* Bank, Sale of
condominium unit. *Emotional Distress. Negligence,* Emotional distress.
*Hazardous Waste.*

On claims for fraud and deceit brought against a bank for its failure to dis-
close to buyers of a foreclosed condominium unit that a toxic waste
contamination problem had existed on a nearby property, summary
judgment correctly entered for the bank where the bank had made no
misrepresentations with respect to the condition of the unit and did not
stand in a fiduciary relationship with the plaintiffs. [168]

On a claim brought under G. L. c. 93A against a bank for its failure to dis-
close to buyers of a foreclosed condominium unit that a toxic waste
contamination problem had existed previously on a nearby property, the
judge correctly ordered summary judgment in favor of the bank, where
the record demonstrated that the bank had possessed only limited knowl-
edge, the problem on the other property had been remedied, the condi-
tion had not affected the condominium, and there was an absence of any
demonstrable future danger to the condominium. [168-171]

On a claim for negligent infliction of emotional distress brought against a
bank for its failure to disclose to purchasers of a foreclosed condomin-
ium unit that a toxic waste contamination problem had existed on a
nearby property, the judge correctly entered summary judgment in favor
of the bank where the bank had owed the plaintiffs no duty that it had
violated and where, in any event, the record demonstrated that the
plaintiffs were attempting to recover emotional distress damages for
their fear of future injury. [171]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 22, 1992.

The case was heard by *Gordon L. Doerfer,* J., on motions
for summary judgment.

The Supreme Judicial Court granted an application for
direct appellate review.

---

[1] Victoria Urman.

*Michael V. Morisi* for the plaintiffs.

*Joseph T. Doyle, Jr.,* for the defendant.

*Monica S. Staaf* for the Massachusetts Association of Realtors, amicus curiae, submitted a brief.

*Scott Harshbarger,* Attorney General, & *Donna Palermino,* Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

GREANEY, J. The plaintiffs, Pete Urman and Victoria Urman, filed a complaint in the Superior Court alleging that, when they purchased a foreclosed condominium unit from the defendant, South Boston Savings Bank (bank), it failed to disclose to them that a toxic waste contamination problem had existed on a nearby property. The plaintiffs claimed that the bank's conduct constituted fraud and deceit, a violation of G. L. c. 93A, and the negligent infliction of emotional distress, which entitled them to the equitable remedies of rescission and restitution and the legal remedy of damages. A judge in the Superior Court considered cross motions for summary judgment, and he denied the plaintiffs' motion and allowed the bank's motion.[2] The plaintiffs appealed from the judgment dismissing their claims. We granted the plaintiffs' application for direct appellate review and now affirm the judgment.

The following are the relevant facts for purposes of summary judgment. The plaintiffs own a residential condominium unit at 9 Hasenfus Circle in Needham, which they purchased from the bank on December 27, 1990. The bank had purchased the unit for $199,000 at a foreclosure auction when the previous owner defaulted on a first mortgage on the unit held by the bank. After the foreclosure auction, the bank listed the unit with a real estate broker. Subsequently, the plaintiffs entered into a purchase and sale agreement with the bank and purchased the unit for $175,000, intending to occupy it as their primary residence. The bank provided a mortgage to the plaintiffs in the amount of $157,500.

When the plaintiffs made their purchase, they were unaware that there had been evidence of contaminated ground water near their new home. In August, 1989, the Massachusetts Department of Environmental Protection (DEP)

---

[2]The plaintiffs' motion sought summary judgment only on the issue of liability.

had declared the area near the condominium to be a "priority" site because of evidence that trichloroethylene (TCE) vapors were entering the Hillside Elementary School from contaminated groundwater flowing under the school.[3] From February to September, 1990, the school was closed for cleanup purposes. The DEP found that the contamination had originated at a development laboratory located in back of Hasenfus Circle and had traveled downhill under Hasenfus Circle and the school. The school reopened approximately four months prior to the plaintiffs' closing on the condominium unit.

The previous owner had told the bank that he had had difficulty selling the unit because of a hazardous (toxic) waste problem at the school, a situation, in his opinion, that was affecting marketability.[4] He also had informed the bank that the property was located between the source of the contamination and the school.[5] The bank's records relating to the mortgage on the unit indicate that the bank was aware of a "hazardous waste [p]roblem" and its impact on the ability of the previous owner to sell.[6] Nevertheless, the bank did not inform the plaintiffs that there had been a contamination problem in the vicinity, that the school had been closed, or that the previous owner had experienced difficulty selling the unit because of the contamination.

In May, 1991, the plaintiffs' unit underwent air quality testing for the presence of TCE. The testing, on two separate occasions, showed that the unit contained only minimal, non-

---

[3]Trichloroethylene is a toxic chemical that, at high doses, has been reported to produce liver, kidney, heart, and respiratory system damage and central nervous system disturbances.

[4]The previous owner stated in his affidavit and deposition that he was unable to sell the property "because of the toxic contamination problem and the [s]chool closing 50 yards from the [p]roperty." He stated that he told the president and a vice president of the bank that "no one would touch the [p]roperty because of the toxic contamination problem."

[5]The previous owner testified in his deposition that there had been a "lot of adverse publicity" about the neighborhood. He also testified that he had informed the bank that homes in the area were being tested because the condominium project was halfway between the source of the contamination and the school, raising concerns that the condominium might be contaminated as well.

[6]The bank's records of communications between it and the previous owner reveal a notation that "[u]nit is located in same neighborhood as [s]chool that is having hazardous [w]aste problem that is affecting marketability."

dangerous levels of TCE. There is no indication that the plaintiffs have been exposed to unsafe levels of TCE. Although corrective measures in the form of the installation of ventilation systems have been taken on some homes in the neighborhood, no corrective measures were proposed, or implemented, at the plaintiffs' unit. There is no indication that the unit may become contaminated in the future.

1. *Fraud and deceit.* The judge correctly allowed the bank's motion for summary judgment on the plaintiffs' allegations of common law fraud and deceit because a seller of property is not under any obligation to disclose defects to a buyer in the absence of a fiduciary duty. See *Kannavos* v. *Annino,* 356 Mass. 42, 46-47 (1969). Silence does not constitute a basis for claiming fraud and misrepresentation, *id.,* even where a seller may have knowledge of some weakness in the subject of the sale and fails to disclose it. See *Nei* v. *Burley,* 388 Mass. 307, 310 (1983); *Greenery Rehabilitation Group* v. *Antaramian,* 36 Mass. App. Ct. 73, 77 & n.5 (1994). "Such nondisclosure does not amount to fraud and is not a conventional tort of any kind." *Id.* at 77. See *Waste Mgt. of Mass., Inc.* v. *Carver,* 37 Mass. App. Ct. 694, 698 (1994). The bank did not make representations of any kind as to the condition of the unit and did not stand in a fiduciary relationship to the plaintiffs. See *Henshaw* v. *Cabeceiras,* 14 Mass. App. Ct. 225, 227 (1982). The bank owed the plaintiffs no duty under the common law to disclose the minimum amount of information it knew and, as matter of law, is not liable for fraud or misrepresentation.

2. *General Laws c. 93A.* The plaintiffs contend that the bank could be found liable under G. L. c. 93A for its failure to disclose that there had been a contamination problem in the neighborhood. The plaintiffs specifically rely on a regulation of the Attorney General, 940 Code Mass. Regs. § 3.16 (2) (1994) (adopted pursuant to the authority contained in G. L. c. 93A, § 2 [*c*]), which provides, in relevant part, that a violation of G. L. c. 93A occurs if "[a]ny person . . . fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction." The provision seeks to extend liability under G. L. c. 93A to cases of nondisclosure of material fact. See *Sheehy* v. *Lipton Indus., Inc.,* 24 Mass. App. Ct. 188, 195 (1987).

In concluding that the bank was entitled to summary judgment on the plaintiffs' claim under G. L. c. 93A, the judge referred in his memorandum of decision to a number of Massachusetts decisions, brought to his attention by the plaintiffs, which imposed liability under G. L. c. 93A for nondisclosure of actual defects existing on, or directly affecting, the property that had been sold.[7] The plaintiffs' claim, by contrast, concerned an off-site problem that no longer existed. This factor concerned the judge, who characterized the plaintiffs' claim as an assertion "that they bought into a bad neighborhood and that there is a vague, undocumented possibility that TCE may somehow seep into their property in the future." The judge decided that "such a precarious grievance" was not actionable, as matter of law, under G. L. c. 93A.

We agree that summary judgment for the bank was appropriate on the G. L. c. 93A claim. The case does not turn exclusively on the fact that the alleged problem was off site, although that is a factor to be considered. In appropriate circumstances, off-site physical conditions, known to a seller who is subject to G. L. c. 93A, may require disclosure if the conditions are "unknown and not readily observable by the buyer [and] if the existence of those conditions is of sufficient materiality to affect the habitability, use, or enjoyment of the property and, therefore, render the property substantially less desirable or valuable to the objectively reasonable buyer." *Strawn* v. *Canuso*, 140 N.J. 43, 65 (1995). See *Brandt* v. *Olympic Constr., Inc.*, 16 Mass. App. Ct. 913, 915 (1983) (liability imposed under G. L. c. 93A, where developer failed to disclose that it had previously arranged with local conservation commission to release conservation restriction on adjoining parcel of land); *Strawn* v. *Canuso, supra* at 50, 59-65 (developer and real estate agent could be found liable, under common law, fraudulent misrepresentation principles and New Jersey Consumer Fraud Act, for failure to disclose that

---

[7]The judge referred to *Schwartz* v. *Rose*, 418 Mass. 41 (1994) (failure to disclose conservation commission restriction on property); *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621 (1978) (failure to disclose drainage problem); *Sargent* v. *Koulisas*, 29 Mass. App. Ct. 956 (1990) (failure to disclose poor condition of equipment in restaurant sale); *Grossman* v. *Waltham Chem. Co.*, 14 Mass. App. Ct. 932 (1982) (failure to disclose insect damage); *Homsi* v. *C.H. Babb Co.*, 10 Mass. App. Ct. 474 (1980) (failure to disclose unavailability of gas supply for oven); *Mongeau* v. *Boutelle*, 10 Mass. App. Ct. 246 (1980) (failure to disclose property encumbrance).

homes in large development had been built near a highly toxic, active, hazardous waste dumpsite in circumstances where the area had the "potential of developing into a future Love Canal").[8]

In this case, the record establishes only that the bank had been made aware of an undefined hazardous (toxic) waste contamination problem that had affected a neighborhood school and had caused difficulty when the bank's mortgagee attempted to sell the unit. Although the school had been closed for about seven months to clean up the contamination, the problem had been remedied, and the school reopened, when the plaintiffs purchased the condominium unit from the bank. Insofar as the bank knew, the contamination was not ongoing, and it had not affected the condominium. In view of the limited state of knowledge possessed by the bank, the past nature of the condition at the school, the fact that the condition had not affected the condominium, and the absence of any demonstrable future danger to the condominium, we conclude, as matter of law, that the bank is not liable under G. L. c. 93A, as interpreted by 940 Code Mass. Regs. § 3.16 (2), for the failure to disclose to the plaintiffs the contamination-related closing of the school. See *Underwood v. Risman*, 414 Mass. 96, 99-103 (1993) (no liability under G. L. c. 93A, and interpretive regulations of the Attorney General, where landlord failed to disclose the possibility of lead-based paint in home, even though landlord had general

---

[8]In deciding that disclosure could be required on the facts before the trial court, the *Strawn* decision distinguished between the disclosure of "transient social conditions" and conditions "root[ed] in the land." *Strawn* v. *Canuso*, 140 N.J. 43, 64 (1995). As to the former, the court stated: "We do not hold that sellers and brokers have a duty to investigate or disclose transient social conditions in the community that arguably affect the value of property. In the absence of a purchaser communicating specific needs, builders and brokers should not be held to decide whether the changing nature of a neighborhood, the presence of a group home, or the existence of a school in decline are facts material to the transaction." *Id.* As to the latter, the court stated, as has been partly noted in the text above: "We hold that a builder-developer of residential real estate or a broker representing it is not only liable to a purchaser for affirmative and intentional misrepresentation, but is also liable for nondisclosure of off-site physical conditions known to it and unknown and not readily observable by the buyer if the existence of those conditions is of sufficient materiality to affect the habitability, use, or enjoyment of the property and, therefore, render the property substantially less desirable or valuable to the objectively reasonable buyer" (footnote omitted). *Id.* at 65.

knowledge that older homes had higher likelihood of contain-
ing lead-based paint, the ingestion of which could harm chil-
dren); Kutner, Chapter 93A Rights and Remedies § 12.25, at
12-14 (1996 & Supp. 1996) ("Even strong suspicions about a
problem . . . do not give rise to a disclosure obligation"
under G. L. c. 93A).

3. *Negligent infliction of emotional distress.* The plaintiffs
claim that the bank is liable for negligent infliction of
emotional distress. The plaintiffs assert that, when they real-
ized that the condominium was close to a previously contam-
inated site, they developed a fear that they would contract
cancer, and that they have physical symptoms of distress as a
result of that fear. Summary judgment for the bank was also
appropriate on this claim.

The plaintiffs' claim requires a basis to find that the bank
had been negligent, namely that the bank owed the plaintiffs
a duty that it had violated. *Payton* v. *Abbott Labs,* 386 Mass.
540, 547 (1982). The bank did not owe a duty and did not
engage in conduct that would warrant a finding of negligence.
Further, and as an independent basis for summary judgment
on the claim, the record would not warrant a finding that the
plaintiffs had been exposed to any contamination or a finding
that their alleged physical symptoms were causally related to
TCE contamination, exposure, or any physical harm. In such
circumstances, there cannot be recovery for emotional distress
damages for fear of future injury. See *Payton, supra* at 556-
557; *Anderson* v. *W.R. Grace & Co.,* 628 F. Supp. 1219, 1229
(D. Mass. 1986).

*Judgment affirmed.*