Winslow, J.
The plaintiffs, Timothy and Marybeth Cole, husband and wife, seek to recover damages for fear of HIV/AIDS after Timothy Cole was injured by discarded surgical tweezers. At the close of the plaintiffs’ case tried before a jury, St 1996, c. 358, the trial judge directed a verdict in favor of the defendant pursuant to Mass. R. Civ. E, Rule 50(a) and this appeal followed. Although claims for emotional distress in Massachusetts can include fear of HTV/AIDS, referred to in other jurisdictions as “HIV/AIDS-phobia,” the plaintiffs failed to meet their burden on causation and the judgment properly was directed for the defendant We affirm.
“In reviewing a directed verdict, [the Court] 'summarized the evidence in the light most favorable to the party having the burden of proof, who ordinarily, as here, [are] the plaintiff[s].” Kolodziej v. Smith, 412 Mass. 215, 217 (1992).[2] Timothy Cole purchased a used family car at a dealership owned by the defendant DJ. Quirk, Inc. (“Quirk”). As part of the purchase negotiations, Quirk agreed to clean the interior of the car of stains and debris and that the car would be ready for pick-up the next day. On the following evening, the Coles and their young children picked up the car from the dealership. The next morning, able to see the condition of the car in the light of day, Mr. Cole observed that the stains and debris had not been removed from the car as Quirk had agreed. Mr. Cole then began to clean the car and remove debris from the passenger compartment While cleaning, Cole reached into the hack pocket of the driver’s seat to remove the contents of the pocket when he felt a sharp point penetrate his skin causing his finger to bleed. Believing he had been stuck by a broken section of the seat, Cole opened the pocket and observed a long pair of sharp surgical tweezers. Carefully removing the tweezers from the seat pocket, Mr. Cole went into his house to wash his bleeding puncture wound. As Mr. Cole frantically scrubbed his wound, his wife Marybeth, a registered nurse, called the family physician who directed Mr. Cole to come to his office. The physician advised Mr. Cole about the possibility of contracting Hepatitis B and HIV and administered a Hepatitis B inoculation and HIV test Upon further investigation after returning *140 home, Mr. Cole learned that a physician had been the previous owner of the car, which heightened his fears that the tweezers could have been contaminated. Both Timothy and Marybeth Cole are familiar with the medical issues; Mr. Cole completed a year of education at the Massachusetts College of Pharmacy, formerly was employed as an Emergency Medical Technician, and was a Suffolk County Deputy Sheriff and DARE. Officer at the time oí trial. The Coles later found prescription scripts in the car containing words such as “viral,” “ELISA,” “antibodies,” and “specific toxicity” which, although the Coles were unsure of their meaning and were not allowed to speculate about their meaning at trial, caused them to fear that the surgical tweezers had been exposed to the HIV virus. For about one year after the incident, because of their concern about HIV exposure, the Coles did not participate in sexual intercourse and now practice safe sex with the use of condoms. Mr. Cole suffered from bouts of diarrhea, nausea and vomiting from his fear of contracting HIV. Although Mr. Cole has tested negative for both Hepatitis B and HIV after the incident, he and his wife are not completely assured that he is free of disease and both remain fearful of the consequences of the incident The surgical tweezers, while in the Coles’ possession at all times relevant to this matter, never have been tested to determine the presence of the HIV virus.
Claims for HIV/AIDS-phobia have been described as an “uneasy class of cases in which bad news is worse than no news at all.”[3] In the absence of any reported Massachusetts decision on claims for negligent infliction of emotional distress related to HIV/AIDS-phobia, we look to other jurisdictions for guidance. With minor variation, courts in other states have expressed two competing views regarding the proof of causation necessary to establish a claim for HIV/AIDS-phobia: (1) Actual Exposure: in order to maintain a cause of action for damages due to the fear of contracting HIV/AIDS, the plaintiff, who has not tested seropositive, must offer proof of actual exposure, meaning proof of both a scientifically accepted method of transmission of the virus and that the source of the allegedly transmitted blood or fluid was in fact HIV-positive[4]; and (2) Reasonable Fear: the plaintiff, not tested seropositive, must prove a specific incident of potential exposure sufficient to create a reasonable fear of having contracted the AIDS virus, even in the absence of a proven source and channel *141 of exposure.[5] Cf. Marriott v. Sedco Forex Intn’l Resources, 827 F.Supp. 59, 74 (D.Mass. 1993) (plaintiff who “exhibited a direct channel of exposure to an HIV-positive vaccine” would “establish!] a viable claim under either set of cases.”). Both views are tempered in some jurisdictions by application of a so-called “window of recovery” or “window of anxiety” that limits damages under either view to emotional distress until “after the plaintiff has had sufficient opportunity to determine with reasonable medical certainty that he or she has not been exposed to or infected with the AIDS virus.”[6] Kerins v. Hartley, 21 Cal.Rptr. 2d 621, 632 (Cal.App. 1993); Brown v. N.Y.C. Health & Hosp. Corp., 648 N.Y.S.2d 880 (2d Dept.1996) (allowing recovery only for the first six months after exposure unless plaintiff can prove actual infection). The plaintiffs invite us to adopt the minority Reasonable Fear test We decline.
The Supreme Judicial Court has expressed reticence regarding the potential for chimerical claims of emotional distress. In Payton v. Abbott Labs, 386 Mass. 540 (1982), the court summarized this position as follows:
We conclude that when recovery is sought for negligent, rather than intentional or reckless, infliction of emotional distress, evidence must he introduced that the plaintiff has suffered physical harm. This requirement, like those set forth in Agis, will serve to limit frivolous suits and those in which only bad manners or mere hurt feelings are involved, and will provide a reasonable safeguard against false claims. We see no reason for abandoning such limitations. ... We are unwilling, therefore, to impose upon the judicial system and potential defendants the burden of dealing with claims of damages for emotional distress that are trivial, evanescent, temporary, feigned, or imagined, in order to ensure that occasional claims of a more serious nature receive judicial resolution.
Payton v. Abbott Labs, 386 Mass. at 555. Viewed through the lens of this reticence, we examine whether Massachusetts should adopt the objective standard of Actual Exposure or the subjective standard of Reasonable Fear in cases alleging fear of HIV/AIDS. Consonant with the majority of courts that have decided the issue, we adopt the objective Actual Exposure standard of causation in reviewing the directed verdict in this action. “Today, although much more is known about how HIV in fact is spread than was known at the beginning of the epidemic, many lay persons continue to believe that HIV can be transmitted through food, silverware, handshakes, and toilet seats.... If persons can obtain compensation for their fear of AIDS, it must be decided which fears are compensable. Should a person be compensated for fears which, although entirely unrealistic from a scientific perspective, in fact affect the person very significantly? A person who truly believes HIV may be communicated through a handshake may suffer significant physical and emotional trauma as a result of shaking hands with a person whom he subsequently learns was HIV-infected.” AIDS and the Law at 365. The objective standard *142 of causation guards against claims for HIV/AIDS-phobia that are “trivial, evanescent, temporary, feigned, or imagined,” Payton v. Abbott Labs, 386 Mass. at 555, while the subjective standard does not Moreover, as a matter of public policy, adoption of the subjective standard holds the potential of stigmatizing persons infected with HIV and making them subject to claims for fear of HIV/AIDS that are not capable of readily being addressed by summary judgment See e.g. Baptiste v. Sheriff of Bristol County, 35 Mass. App. Ct. 119, 125-126 (1993) (“[bjecause of application of the reasonable person standard to facts sufficient to raise a genuine issue as to whether a reasonable person in a defendants position would have acted differently, summary judgment is rarely granted in negligence actions”);[7] Commonwealth v. Martin, 424 Mass. 301, 305 (1997) (“[w]e agree that the widespread ignorance about the nature of this disease and the accompanying prejudices against persons suffering from it or, as here, merely alleged to suffer from it, pose dangers to the accuracy and fairness of the legal process in many ways. See Court Management Issues and Guidelines, in AIDS and the Courts 189 (1990); National Judicial College & ABA AIDS Benchbook (1991)”). To prove their claim for HIV/AIDS-phobia, the Coles were required to prove both a scientifically accepted method of transmission of the virus and that the source of the allegedly transmitted blood or fluid was in fact HIV-positive. They did not meet this burden at trial.
Our embrace of the actual exposure standard is strengthened by the view of the Supreme Judicial Court in Urman v. South Boston Savings Bank, 424 Mass. 165, 171 (1997). Quirk points to Urman in support of its contention that Massachusetts does not recognize fear of future injury claims. We do not read Urman so narrowly. To the contrary, independent of the lack of any duty of care of defendant savings bank in the circumstances of that action, the Urman court noted that the plaintiffs’ claim failed because “the record would not warrant a finding that the plaintiffs had been exposed to any contamination or a finding that their alleged physical symptoms were causally related to ... contamination, exposure, or any physical harm.” Id. In short, the plaintiffs in Urman failed to prove actual exposure. The verdict was directed against the Coles not because Massachusetts does not recognize a claim for fear of HIV/AIDS but because they failed in their proof of causation in such claim. Because a “spouse has a claim for loss of consortium shown to arise from personal injury of tire other spouse caused by negligence of a third person,” Diaz v. Eli Lilly & Co., 364 Mass. 153, 167-168 (1973), Mrs. Cole’s claim for loss of consortium cannot survive Mr. Cole’s failure to prove negligent infliction of emotional distress.
Aside from the claim for fear of HIV/AIDS, the plaintiffs contend that the trial judge improperly directed a verdict on their claim for Quirk’s negligent cleaning of the car and breach of warranty to clean the car as promised. Without any viable claim for HIV/AIDS-phobia, these claims would be distilled to the value of Mr. Cole’s pricked finger and the difference in value between the clean car as promised and the dirty car as delivered. See Stark v. Patalano Ford Sales, Inc., 30 Mass. App. Ct. 194, 201 (1991) (“[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount/). Although the evi *143 dence would support these de minimus claims, the essence of the Coles’ action involved the fear of HIV/AIDS. Significantly, the Coles did not press any claim other then HIV/AIDS-phobia in argument before the trial judge on Quirk’s motion for directed verdict They cannot “raise for the first time on appeal legal theories and arguments that were not presented for the trial judge’s consideration.” Bergendahl v. Mass. Elec. Co., 45 Mass. App. Ct. 715, 723 (1998). Accordingly, the case will not be remanded for trial on the issues other than fear of HIV/AIDS.
For the reasons stated and based on applicable law, the judgment for the defendant Quirk is affirmed.
So ordered.

 We remind trial judges in civil jury cases of the “principle that the better procedure in a case in which it is a close question whether the standard for granting a directed verdict is met is to allow the matter to go to the jury. If the judge then decides that the jury’s verdict cannot stand, a motion for judgment notwithstanding the verdict may be allowed. See Soares v. Lakeville Baseball Camp, Inc., 369 Mass. 974, 975 (1976) ... This procedure is more efficient than initially allowing a motion for directed verdict” Fahey v. Rockwell Graphic Sys., Inc., 20 Mass. App. Ct. 642, 643-44, n. 4 (1985).

 Stephanie B. Goldberg, AIDS Phobia — Reasonable Fears or Unreasonable Lawsuits?, 78 A.B.A. J. 88 (1992) (quoting University of Chicago Law Professor Richard Epstein).

 This view has been adopted by the majority of state jurisdictions that have considered the issue. See e.g. Eric S. Fisher, AIDS Phobia: A National Survey of Emotional Distress Claims for the Fear of Contracting AIDS, Tort & Ins. L.J. 169, 176-179 (Fall 1997) (analyzing state-by-state trends in AIDS-phobia litigation); id. at 179-223 (citing cases); AIDS and the Law §8.9, 145 (David W. Webber ed., 3rd ed., John Wiley & Sons, Inc. Supp. 2000) (stating that “view that a plaintiff must be able to plead and prove ‘actual exposure’... has emerged as the majority rule.”). In the event of destruction of evidence by the defendant, such as disposal of needles after the plaintiff was injured, some courts apply spoliation principles to presume that the source of transmission was in fact HIV positive and leave it to the defense to prove otherwise. Compare Kippenhan v. Chaulk Services, Inc., 428 Mass. 124, 128 (1998) (“[ojur rule excluding evidence as a sanction for the spoliation of physical evidence is a minority position. ... Most jurisdictions that have considered the question have adopted a less severe rule, holding simply that the trier of fact may draw an inference from the intentional spoliation of evidence that the destroyed evidence would have been unfavorable to the spoliator.” (internal citation omitted)).

 This minority view has been adopted in substance in New Jersey, Louisiana, Indiana, New Mexico, Delaware and Maryland.

 “Because the tests most frequently used to determine whether a person is HTV-infected look for the presence of the HIV antibody, which may not be detectable for approximately six months following transmission, a person who fears he is infected may not be able to obtain an immediate determination as to whether or not he is in fact infected.” AIDS and the Law at 362-363. As we hold that the plaintiffs failed to prove any claim for HIV/AIDS-phobia, we need not address whether any such claim would be subject to limitation of damages during the “window of anxiety” or “window of recovery.”

 See, generally, Morbidity and Mortality Weekly Report, “HIV-Related Knowledge and Stigma — United States, 2000,” 49:47 (December 1, 2000) pp. 1062-64 (“[a]n essential component of efforts to prevent new human immunodeficiency virus (HIV) infections in the United States is the use of voluntary HIV counseling and testing by persons at risk for HIV... The stigmatization of persons with HIV and the groups most affected by HIV... is a barrier to testing.”)