Billings, A.J.
For the reasons that follow, the defendant’s Motion for Summary Judgment is ALLOWED.

FACTS

The facts, either undisputed or taken in the light most favorable to the plaintiffs, are as follows.
In January 2000 the plaintiffs (the “Hessletons”) contracted with Deer Run, Inc. (“Deer Run”), a developer, for a house which Deer Run would construct on Lot 7 of a seven-lot subdivision in Leicester. Deer Run had granted a mortgage on the entire subdivision to its bank, First Massachusetts Bank, NA (the “Bank”), of which defendant BankNorth is the successor. Unhappily, as the house was being constructed, Deer Run fell into default. The Bank began foreclosure proceedings against Lots 2, 6 and 7, and the Hessletons’ deposit was returned to them by the broker.
Subsequently, either the Hessletons contacted the Bank or the Bank contacted the Hessletons — the record is in conflict as to which — to discuss how the Hessletons might acquire Lot 7 and the house being built for them. The Bank informed the Hessletons that it could not sell them Lot 7 directly, but that they could bid at the auction.
The Hessletons attended the auction on February 8, 2001. This was held on site, bidders having the opportunity to view the premises, which the Hessletons did. Mrs. Hessleton was the successful bidder on Lot 7; before closing, she assigned her rights to herself and her husband.
The Bank and the Hessletons signed a Memorandum of Sale on the day of the auction. Pertinent provisions of it include the following:
Inaccuracy of the description as to bounds, area, buildings, taxes, encumbrances, and known and unknown defects SHALL NOT BE REASON FOR FAILURE ON THE PART OF THE PURCHASER TO COMPLETE THE SALE. Purchaser will consider the Property as sufficiently described if such offering is indicated by lot, parcel and / or street number if that is the only description available at the time of this auction. Verbal qualifications by the Mortgagee or Auctioneer or their respective Agents SHALL NOT INVALIDATE nor become part of this sale as PURCHASER HAS EXAMINED THE PROPERTY TO HIS/HER SATISFACTION.
Additional clauses provided that the purchasers were taking title subject to all prior mortgages, liens and other encumbrances; that “The Property is sold in ‘as is’ condition, with no representation or warranty of any kind,” including as to the validity of permits or licenses or compliance with zoning and other laws. The sole description of the property was as “Lot 7,” with a book and page reference to the mortgage, and a reference to the Notice of Mortgagee’s Sale of Real Estate, a copy of which was attached to the Memorandum. The latter referenced two recorded plans, one of which was the ANR plan bearing the approval of the ZBA. This showed all seven lots, complete with metes and bounds, but did not show house footprints, driveways, or other improvements.
The transaction closed on February 14, the plaintiffs receiving a deed which described the premises as “Lot 7 on a plan recorded . . .” and again referenced the ANR plan. At no point prior to the auction or the closing did the Hessletons commission a title search or — what might have been more revealing — a survey of the premises they purchased; nor did the Bank prevent them from doing so.
In April, however, the Hessletons sought mortgage financing (having paid cash at the closing). For this, they retained a surveyor to prepare a Mortgage Inspection Plan, and learned for the first time that a portion of the two-car garage attached to the house, a parking area, and the well lay outside the boundaries of Lot 7. Somewhat later, in circumstances detailed below, they learned that the front portion of “their” driveway also crossed land not part of Lot 7.
The remaining Deer Run land on which the Bank foreclosed — and on which, it turned out, lay the Hessletons’ well and portions of their garage, parking area and driveway — was purchased by a man named Pearson. Over the summer of 2001, the Bank filed a Land Court action to reform Pearson’s and the Hessletons’ deeds. Pearson thereupon blockaded the *8 end of the Hessletons’ driveway, thus alerting them to this additional problem. The Hessletons filed a second Land Court action, seeking equitable relief against Pearson; a preliminary injunction issued, and the blockade came down. Finally, in October, Pearson accepted $25,000 from the Hessletons and he and they exchanged deeds, re-drawing the lot line so that the entire garage, parking area, well, and driveway were located on the Hessletons’ land.
A demand letter from the Hessletons’ counsel to the Bank under G.L.c. 93A, and then this action, followed. The Complaint asserts three counts: for misrepresentation, unjust enrichment, and violation of Chapter 93A.

DISCUSSION

Summary judgment is appropriate if the pleadings and other relevant and appropriate materials “show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).
A. Count I: Misrepresentation
Both of the Hessletons disclaimed in their depositions any allegation that the Bank intended to deceive them, and indeed, the record contains no evidence that the Bank knew, any more than they did, that the improvements to Lot 7 extended beyond its boundaries. Count I is, then, a claim of negligent misrepresentation.
In order to recover for negligent misrepresentation a plaintiff must prove that the defendant (1) in the course of his business, (2) supplies false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information.
Nota Construction Corp. v. Keyes Associates, Inc., 45 Mass.App.Ct. 15, 19-20 (1998).
Missing from the record is any evidence that the Bank supplied false information to the Hessletons. So far as appears, the property conveyed was precisely what the Notice of Mortgagee’s Sale of Real Estate and the Memorandum of Sale promised: Lot 7 as shown on the ANR plan.
The Hessletons assumed, perhaps reasonably, that the garage, parking area, well and driveway that Deer Run had been constructing for them lay within the boundaries of the lot it had agreed to sell them. The Bank did not say so, however. Any notion that it did so impliedly merely by showing, then selling, the property to the Hessletons is belied both by caselaw, see Kannavos v. Annino, 356 Mass. 42, 49 (1969), Swinton v. Whitinsuiüe Sav. Bank, 311 Mass. 677, 678-79 (1942), and by the Memorandum of Sale, which specified an “as is” sale and disclaimed all representations and warranties.
In all, this is a somewhat weaker case than Urman v. South Boston Sav. Bank, 424 Mass. 165 (1997), where the SJC affirmed the entry of summary judgment in favor of a bank which sold, at foreclosure, a condominium unit which the previous owner had told it — but the Bank did not inform the buyers — was next to a hazardous waste disposal site. The court stated:
Silence does not constitute a basis for claiming fraud and misrepresentation, even where a seller may have knowledge of some weakness in the subject of the sale and fails to disclose it. “Such nondisclosure does not amount to fraud and is not a conventional tort of any kind.” The bank did not make representations of any kind as to the condition of the unit and did not stand in a fiduciary relationship to the plaintiffs. The bank owed the plaintiffs no duty under the common law to disclose the minimum amount of information it knew and, as matter of law, is not liable for fraud or misrepresentation.
424 Mass, at 168 (citations omitted).
Even if the Bank had made some representation to the Hessletons that implicated the then-unknown boundary issue, moreover, the above-quoted language from the Memorandum of Sale would still preclude relief on a theory of negligent misrepresentation. See Sound Techniques, Inc. v. Hoffman, 50 Mass.App.Ct. 425, 429-34 (2000) (while exculpatory contract language cannot bar an action for fraud, it may bar a claim for negligent misrepresentation). Under that language, the Hessletons assumed — after conducting whatever investigation if any, they deemed appropriate — the risk that ultimately materialized.
For all of these reasons, summary judgment will enter for BankNorth on Count I.
B. Count II: Unjust Enrichment
On the record before the Court Count II, for unjust enrichment, also fails.
Three elements must be established in order that a plaintiff may establish a claim based on unjust enrichment. These elements are: 1) A benefit conferred upon the defendant by the plaintiff; 2) An appreciation or knowledge by the defendant of the benefit; and 3) The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable [that is, unjust] for the defendant to retain the benefit without payment of its value. Usually, that means that the parties were dealing with each other in such a way, or in such circumstances, that reasonable people would expect payment by the defendant to the plaintiff for some benefit conferred by the plaintiff on the defendant.
12 Williston on Contracts §1479 (3d ed.1957).
*9 The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party.
Salomon v. Terra, 394 Mass. 857, 859 (1985).
Here, there is no evidence that the Bank was unjustly enriched. It was not, for example, the beneficiary of construction paid for by the Hessletons and improving land owned by the bank; the Bank never owned any of the property it foreclosed upon. Nor is there evidence that the Bank received more at foreclosure due to the builder’s mistake which, so far as appears, nobody knew about at the time and which, even if it had been, could scarcely be regarded as increasing the value of the land encroached upon.[1] Since “the proper measure of recovery [in an unjust enrichment claim] is the reasonable value of the benefit conferred,” Nassr v. Commonwealth, 393 Mass. 767, 772 n.4 (1985), there is nothing to recover here. Even if there were, moreover, the parties’ exculpatory contractual language would seem to carry the day on this claim as well.
C. Count III: Chapter 93A
The Bank, having made no false representations to the Hessletons, cannot be said to have acted deceptively. Nor did it act unfairly. Its conduct was not such as to fall “within at least the penumbra of some common-law, statutory, or other established concept of unfairness,” nor was it “immoral, unethical, oppressive, or unscrupulous.” PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975), quoting from 29 Fed.Reg. 8325, 8355 (1964); see also Urman v. South Boston Sav. Bank, 424 Mass, at 168-71. This is not even an appropriate case for reciting the truism that “not every negligent act is unfair or deceptive and thus unlawful under G.L.c. 93A, §2.” Swanson v. Bankers Life Co., 389 Mass. 345,349 (1983). The Bank has not been shown to have acted negligently, or in violation of the parties’ understandings and reasonable expectations, or culpably in any way. There is thus no basis for relief under G.L.c. 93A.

ORDER

For the foregoing reasons, the defendant’s motion for summary judgment is ALLOWED. Judgment shall enter, dismissing the Complaint.

Even Pearson cannot be said to have been unjustly enriched by the overhanging garage, parking area, and driveway, which would have to be regarded as a nuisance, not a benefit. (Whether or not the well might have been of some use to him does not appear.)